ISAAC CONROE LONG v. THE STATE.

No. 410.    Decided February 2, 1910.

Rehearing Denied April 19, 1910.

**1.—Burglary—Constitutional Law—Special Session—Jurisdiction of Legislature.**

Section 40, of article 3, of the Constitution, is a limitation of the general power of the Legislature, and should be strictly construed and not be given effect against the general power of the Legislature.

Vol. LVIII. Crim.—14.

**2.—Same—Legislative Act—Favorable Presumption.**

Every presumption should be indulged in favor of the constitutionality of a legislative enactment, and the judicial department of the government will be justified in pronouncing it unconstitutional only when it is shown to be a manifest violation of a constitutional restriction. Following Solon v. State, 54 Texas Crim. Rep., 261, and other cases.

**3.—Same—Proclamation of Governor—Special Session—Subjects for Legislation —Constitutional Law.**

The Constitution of Texas does not require the proclamation of the Governor to define the character or scope of legislation which may be enacted at a special session, but only in a general way to present the subjects for legislation. Following Baldwin v. State, 21 Texas Crim. App., 591, and other cases.

**4.—Same—Changing Time of Holding Criminal District Courts.**

The proclamation of the Governor of Texas convening the Thirty-first Legislature in special session, directing them among other things to enact laws amending and changing the existing laws governing court procedure, etc., authorized the Act of said Legislature in changing, extending and rearranging the terms of the Criminal District Courts for Harris and Galveston Counties. Following Brown v. State, 32 Texas Crim. Rep., 119, and other cases.

**5.—Same—Daytime Burglary—Charge of Court—Sunrise.**

Where, upon trial for burglary, the evidence showed that on the date of the alleged offense the sun rose at eighteen minutes past five, and that the burglar was found in the room at about ten or fifteen minutes past five, there was no error in the court's charge to submit a daytime burglary, daytime, according to the statutes, beginning thirty minutes before sunrise.

**6.—Same—Leading Question—Identification of Defendant.**

Where, upon appeal from a conviction of burglary, the bill of exceptions did not show that the leading question asked the State's witness did not fall within the exception to the rule and that the court abused his discretion, there was no error.

**7.—Same—Practice on Appeal.**

Where the questions of evidence, upon appeal from a conviction of burglary, were not reserved by bill of exceptions, the same could not be reviewed.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. E. R. Campbell.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. M. Gibson* and *J. M. Fenn* and *E. T. Branch*, for appellant.—On the question that the subject of legislation was not contained in the Governor's proclamation convening the Legislature in special session: Casino v. State, 34 S. W. Rep., 769; Railway Company v. Odum, 53 Texas, 343; Blessing v. Galveston, 42 Texas, 641; Hunt v. State, 22 Texas Crim. App., 396.

On question of the court's charge in submitting a daytime burglary: Jones v. State, 47 Texas Crim. Rep., 126, 80 S. W. Rep., 530.

*John A. Mobley*, Assistant Attorney-General, and *W. G. Love*, Criminal District Attorney, for the State.—Cited cases in opinion.

RAMSEY, JUDGE.—Appellant was convicted of burglary, and his punishment assessed at two years confinement in the penitentiary.

The principal question in this case involves the validity of the Act of the Thirty-first Legislature, changing, extending and rearranging the terms of the Criminal District Court for Harris and Galveston Counties.

1. It is contended by appellant, and was urged in a strong oral argument that the Act is invalid in that same was in contravention of section 40, article 3, of the State Constitution, in that it was not embraced within the subjects designated by the proclamation of the Governor calling the Legislature in special session. Section 40 of article 3 is as follows: "When the Legislature shall be convened in a special session, there shall be no legislation upon subjects other than those designated in the proclamation of the Governor calling such session, or presented to them by the Governor; and no such session shall be of longer duration than thirty days." It was held in the case of Casino v. State, 34 S. W. Rep., 769, that it may be shown that legislation passed at a special session of the Legislature was in violation of this section. Some doubt of the correctness of this view was expressed by Judge Willson in the case of Baldwin v. State, 21 Texas Crim. App., 591, where he says: "It is a question well worthy of serious consideration, whether a court in this State can go behind a statute which is valid upon its face, and inquire into the particular authority by virtue of which it was enacted." Usener v. State, 8 Texas Crim. App., 177; Hearne v. State, 32 Texas, 546; Blessing v. Galveston, 42 Texas, 641. The case of Casino v. State, supra, is also authority for the proposition that this section is mandatory, and that where an Act has been passed at a special session on a subject not embraced in the Governor's proclamation, his approval can not make it valid, and that an Act passed at such special session not reasonably within the purview of such call is, and by the courts will be declared to be, unconstitutional. By inference, if not directly, this view is sustained by the case of Brown v. State, 32 Texas Crim. Rep., 119.

In passing on the appeal we shall treat the question as one subject to judicial inquiry. We think these propositions laid down in the valuable brief filed in behalf of the State may be accepted as unquestionably sound:

First: In the absence of a constitutional provision limiting the same, the jurisdiction of the Legislature when convened in special session is as broad as at a regular session, and that section 40 of article 3 of the Constitution constitutes an exception to the general rule, and is a limitation of the general power of the Legislature. And where such limitation is thus imposed upon the general power of the Legislature, it should be strictly construed, and should not be given effect as against such general power, unless the Act in question is clearly inhibited by such limitation. Baldwin v. State, 21 Texas Crim. App., 591; State v. Shores, 31 W. Va., 491, 13 Am. St. Rep., 875; People

v. Blanding, 63 Cal., 333; Cooley on Const. Lim., 204. Says this author: "Nor are the courts at liberty to declare an act void, because in their opinion it is opposed to a spirit supposed to pervade the Constitution, but not expressed in words. 'When the fundamental law has not limited, either in terms or by necessary implication, the general powers conferred upon the Legislature, we can not declare a limitation under the notion of having discovered something in the spirit of the Constitution which is not even mentioned in the instrument.' " People v. Fisher, 24 Wend., 214; State v. Staten, 6 Cold., 233; Walker v. Cincinnati, 21 Ohio St., 14; State v. Smith, 44 Ohio St., 348; People v. Rucker, 5 Col., 455; Wooten v. State, 5 Sou. Rep., 39.

Second: ˙Every presumption should be indulged in favor of the constitutionality of a legislative enactment, and the judicial department of the government will be justified in pronouncing it unconstitutional only when it is shown to be a manifest violation of a constitutional restriction. Solon v. State, 54 Texas Crim. Rep., 261, 114 S. W. Rep., 349; Sweet v. Syracuse, 129 N. Y., 316; Mfg. Co. v. Falls, 90 Tenn., 466; Kellogg v. Page, 44 Vt., 356; Newsom v. Cocke, 44 Miss., 352.

Mindful of these salutary and safe rules of construction, it follows, third, that the Constitution does not require the proclamation of the Governor to define the character or scope of legislation which may be enacted at a special session, but only in a general way to present the *subjects* for legislation and thus confine the business to a particular field which may be covered in such way as the Legislature may determine. Baldwin v. State, 21 Texas App., 591; Brown v. State, 32 Texas Cr. Rep., 119; Devereaux v. The City of Brownsville, 29 Fed., 742.

The proclamation of the Governor convening the Legislature in special session contained, among other things, the following: "To enact adequate laws simplifying the procedure in · both civil and criminal courts of this State, and to enact laws amending and changing the existing laws governing court procedure as will reduce the present unusual and unnecessary expense of litigation and as will tend to the speedy administration of justice in civil and criminal cases." While it is undoubtedly true that the construction which the Legislature and the executive place on the language of such a call is not conclusive upon the courts, it is entitled to great weight. Such call is in a sense the chart of the Legislature, and contains the limitations under which and in respect to which only they can act. When, therefore, acting under such a call they undertake to consider subjects and pass laws in response thereto, and such laws receive the approval of the executive, courts are and should of right be reluctant to hold that such action is not embraced in such call, and will not so declare unless the subject manifestly and clearly is not embraced therein. The term "court procedure" in the connection in which it was used by the Governor in his proclamation was doubtless intended to apply, and should be held

to have the effect to apply generally to all laws governing the operation of courts, and we think necessarily included the terms and times during which such courts should hold their sessions. If the Legislature by enacting a law amending and changing existing laws increased and extended the length of the terms of the Criminal District Court of Harris County, which would have the effect and which would tend to the speedy administration of justice in criminal cases, it would seem that such an Act would be within the jurisdiction of the Legislature, and would be legislation upon the general subject presented for their consideration by the Governor in his proclamation. It was stated in the case of Brown v. State, supra: "The Legislature may only enact legislation in part in relation to the subject mentioned in the call, does not render .such legislation invalid, nor is it necessary to the validity of such legislation that the whole subject matter should be acted on by the Legislature. The call includes the entire subject of reapportioning the judicial district, and authorized any and all such legislation upon that subject as was deemed necessary by the Legislature. It was not necessary, nor would it have been proper, for the Governor, in his proclamation, to have suggested in detail the legislation desired. It was for the Legislature to determine what the legislation should be." The case of Baldwin v. State, supra, is, we think, directly in point, and beyond question supports the validity of the Act here under consideration. In that case Baldwin was indicted for following the occupation of selling the Illustrated Police News and Police Gazette without first paying a tax upon such occupation. The Act taxing this occupation was passed in 1882 at a special session of the Legislature (see Laws 17th Leg., Special Session, p. 18), and the constitutionality thereof was attacked on the ground that the legislation was enacted without constitutional warrant, and was inhibited by section 40, article 3, of our Constitution. The proclamation of the Governor convening the Seventeenth Legislature, among other things, said: "To reduce the taxes, both ad valorem and occupation, so far as it may be found consistent with the support of an efficient State government." There was nothing in the proclamation which authorized the levying of additional taxes upon occupations not then taxed. In that case, in a well reasoned opinion by Judge Willson, the Act there assailed was held constitutional. In passing on the question Judge Willson says: "One of the purposes of convening the Legislature in special session is stated in said proclamation to be, 'to reduce the taxes, both ad valorem and occupation, so far as it may be found consistent with the support of an efficient State government.' This, it seems to us, embraces the whole subject of taxation, and authorizes any and all such legislation upon that subject as may be deemed necessary by the Legislature. To so legislate as to reduce the taxes, and at the same time provide for the support of an efficient State government, in our opinion, includes the power to levy taxes upon property and occupations not before taxed. It might be wholly impracticable to accomplish a reduction of taxes

and at the same time maintain the State government, without the exercise of such power. All the Governor could properly do was done. He called the attention of the Legislature to the subject upon which, in his opinion, legislation was desired. That subject was taxation. It was not necessary, nor would it have been proper for him, in his proclamation, to have suggested in detail the legislation desired. It was for the Legislature to determine what the legislation should be.

"Legislative power, except where the Constitution has imposed limits upon it, is practically absolute. And where limitations upon it are imposed, they are to be strictly construed, and are not to be given effect as against the general power of the Legislature, unless such limitations clearly inhibit the Act in question. (Cooley's Con. Lim., 204.)

"It was said in Railroad Company v. Riblette, 66 Pennsylvania State, 164: 'If the Act itself is within the scope of legislative authority, it must stand, and we are bound to make it stand, if it will, upon any indictment. . . . Nothing but a clear violation of the Constitution, a clear usurpation of power prohibited, will justify the judicial department in pronouncing an Act of the legislative department unconstitutional and void.' (See also Cooley's Con. Lim., 223.)"

The term "court procedure," as stated, is a very general term, and has reference to all rules or laws governing the operation of courts, and includes those laws regulating the times within which sessions of courts may be held for the transaction of business. If there could be any question as to the meaning of the term "court procedure" standing alone and unexplained by the connection in which it is used, there would seem to be no question as to its meaning in the connection in which it was used in the message under consideration. In this connection it should be noted that the case of Baldwin v. State, supra, was approved in Brown v. State, also noted above as well as in the case of Preston v. Finley, 72 Fed. Rep., 850, as well as by the Supreme Court of Colorado in 19 Col., 333, 35 Pac. Rep., 531. So that we are constrained to hold that the Act in question is valid, and not subject to the assault made upon it herein.

2. The indictment in the case contained two counts, one alleging, in substance, that the entry was made in the daytime, and the other alleging burglary by night of a private residence occupied by one W. I. Black. Only the first count was submitted to the jury. It is contended that under the evidence in the case appellant, if guilty at all, was guilty of a night-time burglary, and there was no evidence to support the submission of a charge under the first count or to support the verdict of the jury convicting him under same. If there was evidence raising the issue and sufficient to support the conviction under the first count, the judgment should be affirmed. So that the question recurs as to whether or not there is evidence to justify such submission and to support such a finding. We think that both of these contentions must be answered in the affirmative. The evidence of Mrs. Black is to the effect, in substance, that some considerable time, more or less

indefinitely stated, before the intruder was discovered in her room, that she heard a noise which attracted her attention, and that she awakened her husband, and hearing no further noise that he went to sleep, and she endeavored to do so, but was wakeful and did not go to sleep. That quite a while after this, and at a time fixed very nearly to a quarter past five in the morning, she discovered a man in her room, whom she subsequently identified as appellant; that she awakened her husband, gave the alarm, and that the man ran rapidly from the room and escaped, her husband following. It was shown that the sun arose at the date of the commission of the offense, which was in August, at eighteen minutes past five. The burglar was found in the room and fled therefrom at about ten or fifteen minutes past five. How long he had been in the room is left indefinite. There is little, if any, testimony except the merest surmise that he had been in the house for any considerable time before his discovery. These facts lead us to conclude that the trial court was well within the testimony in submitting the issue, and that under our statute fixing and defining what is meant by daytime as including thirty minutes before sunrise, it is doubtful if the court would have been authorized at all to have submitted a night-time burglary. We have given the merest outline of the facts, but the conclusions stated above are fairly deducible from all the evidence.

3. During the trial and while the witness Mrs. W. I. Black was on the stand, after she had testified on her direct examination as to her knowledge of what had occurred in relation to said burglary, she was asked, among other things, the following question by the district attorney, to which she made the following replies:

"Are you certain that he is the man? (pointing to the defendant) are you positive that he is the man? Defendant objected to the question as being leading, because it suggested the answer and suggested an answer contradicting the statement she had already made in her direct examination, and in her cross-examination by defendant. The court overruled said objection and the defendant then and there excepted. The district attorney then and there without waiting for the witness to answer asked her the following question: "I will ask you to state whether you are positive the defendant is the man that was in your house?" This question was also objected to for the same reason as the other question that the same was leading and suggested to the witness it was necessary for her to answer in the affirmative. The court overruled the objection and permitted the witness to answer, which witness answered, "Yes, sir, he is the man; I feel that he is the man; he looks just like the one I saw, and it was so light I felt that I would know him again." To the action of the court in permitting these questions to be asked and answers given, the bill recites that appellant then and there excepted for the reasons above set out and appearing. That these questions are leading is undeniably true. In what connection they were asked, whether the witness was hostile,

or whether it was the purpose of counsel for the State rather to guard the interest of appellant and attain the ends of justice than to thwart same does not appear by the bill. It is easily conceivable that it was the purpose of counsel and that the effect of the questions would have been rather to test the strength of the witness' recollection and disparage same than to induce the witness to make her answers stronger and more criminative. The method of interrogation of witnesses is largely within the discretion of the trial court, and we should not feel it our duty to reverse convictions if there are no other good reasons appearing in the record because such questions were permitted, unless it appeared from the whole record that the court below had abused the discretion which the law confides to him, and that such abuse had resulted in injury to appellant.

Some other questions are set out in appellant's motion for a new trial as basis for reversal, but so far as important, they were not saved by bill of exceptions and relate to matters, therefore, which we can not review.

Finding no eror in the proceedings of the court below, the judgment of conviction is in all things affirmed.

*Affirmed.*

[Rehearing denied April 19, 1910.—Reporter.]