## Ex Parte Ed Davis.

### No. 5354.   Decided May, 14, 1919.

### Dissenting opinion filed October 25, 1919.

**1.—Habeas-Corpus—Manufacturing Intoxicating Liquors—Constitutional Law.**

Chapter 24, Acts of the Thirty-fifth Legislature, fourth called session, prohibiting the manufacture of spirituous, vinous, malt liquors, or medicated bitters, capable of producing intoxication, except for medicinal and other purposes, known as the state-wide prohibition law, is valid and constitutional. Davidson, Presiding Judge, dissenting.

**2.—Same—Legislative Power—Police Regulations.**

The legislative power of the State is vested in the Legislature by article 3, section 1, of the Constitution, and except as restricted by other provisions of the Constitution the Legislature may exert all the police power of the State, including the prohibition of the manufacture and sale of intoxicating liquors. Following: Rippy v. U. S., 193 U. S., 504, and other cases.

**3.—Same—Constitutional Law—Manufacture of Intoxicating Liquors.**

Article 16, section 20, of the Constitution prescribes the exclusive means of putting in force a law prohibiting the sale of intoxicating liquors, and the Legislature is not authorized to pass and enforce a law ignoring the power conferred upon the qualified voters of the counties and districts to decide the matter at an election. Following: Ex parte Myer, 84 Texas Crim. Rep., 288; 207 S. W. Rep., 100, and other cases, but with respect to prohibiting the manufacture of intoxicating liquors, the Constitution does

not point out the manner in which it shall be made. Following: Baldwin v. State, 21 Texas Crim. App., 293. Davidson, Presiding Judge, dissenting.

### 4.—Same—Constitutional Law—Legislative Restrictions.

The fact that an express direction, restricting the power of the Legislature as to the prohibition of sales of intoxicating liquor is in the Constitution, the absence of a restriction to prohibit the manufacture of such liquors, leaves the Legislature unfettered to pass a law to prohibit the manufacture of such liquors. Davidson, Presiding Judge, dissenting.

### 5.—Same—Intoxicating Liquors—Police Power—Constitutional Law.

The theory that section 20, article 16, of the Constitution, withdraws entirely from the Legislature the right to exert the police power over the control of intoxicating liquors has been rejected by the courts of this State in numerous instances. Following: Fitch v. State, 58 Texas Crim. Rep., 367, and other cases. Davidson, Presiding Judge, dissenting.

### 6.—Same—Constitutional Law—Intoxicating Liquors—Vested Right.

The contention that the practical effect of the prohibition of the manufacture of intoxicating liquors in this State would be an indirect violation of section 20, article 16, of the Constitution, is not sound, as this does not confer upon the citizen any vested right in the sale of intoxicating liquors; it only confers a political right and legislative power upon the citizen to decide at an election whether the sale of said liquors shall be effective within prescribed limits.

### 7.—Same—Constitutional Law—Legislative Power.

In prohibiting the manufacture of intoxicating liquors, the Legislature exercises a part of the police power embraced within the general power conferred upon it by the Constitution; and the limitation imposed upon the Legislature to enforce another phase of the police power, that is, the sale of such liquors, does not imply a denial of its power to prohibit the manufacture of such liquors. Davidson, Presiding Judge, dissenting.

### 8.—Same—Special Session—Proclamation of Governor—Legislative Power.

Where the Governor in his proclamation enumerated the following purposes for the fourth called session of the Thirty-fifth Legislature, to wit, to enact a law to prohibit the sale of intoxicating liquors within ten miles of any army camp, and to prohibit the sale of such liquors by any person without license, and also to prohibit such sales to any person in uniform or enlisted in the military service, together with the subsequent message upon this subject, and afterwards approved the Act, *supra*, of state-wide prohibition, said Act was constitutionally passed. Following: Long v. State, 58 Texas Crim. Rep., 209, and other cases. Davidson, Presiding Judge, dissenting.

### 9.—Same—Original Application—Writ of Habeas Corpus—Pleading.

Where the application for an original writ of habeas corpus to this court was not accompanied by any statement of facts, the same was a mere pleading and proves nothing. Following: Ex parte Wellburn, 70 Texas Crim. Rep., 464, and other cases

### 10.—Same—Habeas Corpus—Court of Criminal Appeals—Rule Stated.

The rule was early laid down by this court that where no valid reason is shown why an application was not presented to the lower court, the writ

would be refused by this court. Following: Ex parte Lynn, 19 Texas Crim. App., 120, and other cases. The writ at the hands of this court snould be issued originally only in extraordinary cases. Following: Ex parte Lambert, 37 Texas Crim. Rep., 435, and other cases. ·

### 11.—Same—Examining Court—Habeas Corpus.

It is observed that the offense, if any, charged against relator is a felony, upon complaint filed before the justice of the peace, and this court has uniformly declined to interfere with the jurisdiction of such magistrate by awarding a writ of *habeas corpus* before a hearing and judgment in such trial court. Following: Ex parte McCorkle, 29 Texas Crim. App., 20, and other cases.

### 12.—Same—Practice in Court of Criminal Appeals.

This court has power to issue the writ of *habeas corpus*, and in an extraordinary case may compel or procure evidence necessary to a determination of the issues made thereunder, but in an ordinary case the jurisdiction of this court is appellate and only in this way should such cases be brought here.

### 13.—Same—Constitutional Law—Statutes Construed.

Section 1 of the Act of the fourth called session of the Thirty-fifth Legislature, known as the state-wide prohibition law, contains nothing except the prohibition of the manufacture of intoxicating liquors in this State, and it is specifically provided in another section of said Act that if any part or section of said Act be held unconstitutional that this shall not affect the remainder of said Act. Distinguishing: Ex parte Myer, 84 Texas Crim. Rep., 288, 207 S. W. Rep., 100.

### 14.—Same—Proclamation of Governor—Rule Stated—Called Session.

If the Governor submits to a called session of the Legislature, legislation on any subject, the whole of such subject is thereby opened for such legislation as the lawmakers may enact relative thereto. Davidson, Presiding Judge, dissenting.

From Dallas County.

Original *habeas corpus* proceeding, asking release from arrest upon a complaint in the Justice Court, charging a violation of section 1, chapter 24, Act of Thirty-fifth Legislature, Fourth called session, known as the state-wide prohibition law.

The opinion states the case.

*Scott & Fagan*, for relator.—On question of proclamation of governor and unconstitutionality of law: Ex parte Myer, 207 S. W. Rep., 100; Ex parte Hollingsworth, 83 Texas Crim. Rep., 400; Commonwealth v. Campbell, 117 S. W. Rep., 383, and cases cited in dissenting opinion.

*E. A. Berry*, Assistant Attorney General, for the State.—On question of proclamation of governor at called session of Legislature: Long

v. State, 58 Texas Crim. Rep., 209, and cases cited in the majority opinion.

MORROW, JUDGE.—The relator is charged with unlawfully manufacturing intoxicating liquors. He claims that the law denouncing this offense is void. Sec. 1, chap. 24, Acts Thirty-fifth Legislature, Fourth Called Session, is as follows:

"The manufacture of spirituous, vinous, or malt liquors or medicated bitters capable of producing intoxicating—except for medicinal, scientific, mechanical, and sacramental purposes—is hereby prohibited within the State."

The legislative power of the State is by Article 3, Section 1, of the Constitution vested in the Legislature, and except as restricted by other provisions of the Constitution, the Legislature may exert all of the police power of the State, including the prohibition of the manufacture and sale of intoxicating liquors. Joyce on Intox. Liquors, Sec. 83; Rippy v. United States, 193 U. S. 504; Mugler v. Kansas, 123 U. S. 625; Rose's Notes on U. S. Reports, (Rev. Ed.), vol. 13, p. 1183; Kansas v. Durein, 15 L. R. A. (N. S.) 909 and note.

Section 20, Article 16 of the Constitution declares that, "The Legislature shall, at its first session, enact a law whereby the qualified voters of any county, justice's precinct, town, city (or such subdivision of a county as may be designated by the Commissioners Court of said county) may, by a majority vote, determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits."

We have held that this provision prescribed the exclusive means of putting in force a law prohibiting the sales of such liquors, and that the Legislature was not authorized to pass and enforce a law ignoring the power conferred upon the qualified voters of the counties and districts to decide the matter at an election. Ex parte Myer, 84 Texas Crim. Rep., 288, 207 S. W. Rep., 100.

In reaching that conclusion we were controlled by the principle that the clause of the Constitution mentioned conferred upon the qualified voters of the counties and districts named a legislative function: that of deciding whether a law prohibiting the sale of liquor should operate, and from time to time whether it should continue to do so. State v. Texas Brewing Co., 106 Texas, 121; Ex parte Mitchell, 177 S. W. Rep., 953; Lyle v. State, 80 Texas Crim. Rep., 606, 193 S. W. Rep., 680.

To the extent that the legislative power is conferred on such qualified voters, it is withheld from the Legislature, but with respect to prohibiting the manufacture of intoxicating liquors, the Constitution does not, as in the case of sales, point out the manner in which it shall be made, nor confer any option upon the people to decide the matter by their votes, and the restriction of the general power of

the Legislature touching the prohibition of sales is not to be extended to deny the power to prohibit the manufacture of intoxicants. Baldwin v. State, 21 Texas Crim. App., 293.

The fact that an express direction necessarily restricting the power of the Legislature touching the prohibition of sales of liquor is embraced in the Constitution, and no restriction expressed therein on the power to prohibit the manufacture of such liquors, indicated that in that particular the Legislature is unfettered.

The theory that section 20, article 16, of the Constitution withdraws entirely from the Legislature the right to .exert the police power over the control of intoxicating liquors has been rejected by the courts of this State in numerous instances. In Dupree's case, 102 Texas 455, it is said: ''The proposition that only sales may be prohibited has sometimes been though to imply the further one that the prohibition can only be enforced by denouncing and punishing as an offense the completed sale. This restricts the power granted within too narrow limits. The purpose of the prohibition is to prevent the thing prohibited, and this provision of the Constitution prescribes no scheme of legislation by which that is to be done, but leaves the choice of methods to the law-making power.''

In the case of Fitch v. State, 58 Texas Crim. Rep., 367, the question before the court was the validity of a statute prohibiting the pursuit of the business of selling intoxicating liquors in prohibition territory. This statute was upheld in an opinion citing numerous precedents upon the principle that, while sec. 20, art. 16, of the Constitution designated an exclusive method by which the sales of intoxicating liquor might be prohibited, it did not further restrict the power of the Legislature over the subject of intoxicating liquor. The act is so drawn both as to separation of its parts and express declaration, that the invalidity of one section does not vitiate the whole law. Ex parte Towles, 48 Texas, 413; State v. Duncan, Amer. & Eng. Ann. Cases, vol. 1916D, p. 1, note.

The contention that the practical effect of the prohibition of the manufacture in the State would retard or render inconvenient the conduct of the business of selling such liquors, and that for that reason would be an indirect violation of sec. 20, Art. 16, of the Constitution, we think is not sound. That subdivision of the Constitution does not confer upon the individual citizen any vested right in the sale of intoxicating liquors. It, as above stated, only confers a political right and legislative power, upon the citizens of the districts named, to decide at an election whether a law prohibiting the sales of such liquors shall be effective within the prescribed limits, and from time to time whether it shall remain so. There is no inherent right in a citizen to sell intoxicating liquors. It is not a guaranteed privilege of a citizen of the State of the union. Joyce on Intox. Liquors, secs. 77 and 87; Ruling Case Law, vol. 15, p. 259; 23 Cyc.

75. In prohibiting the manufacture of such liquors the legislature, in our opinion, exercised a part of the police power within the general power conferred upon the Legislature by the Constitution, and the fact that there is imposed a limitation upon the power of the Legislature to enforce another phase of the police power—that of prohibiting sales—does not imply a denial of its power to prohibit the manufacture of such liquors. "The courts are not at liberty to declare an Act void, because in their opinion it is opposed to a spirit supposed to pervade the Constitution, but not expressed in words. 'When the fundamental law has not limited, either in terms or by necessary implication, the general powers conferred upon the legislature, we cannot declare a limitation under the notion of having discovered something in the spirit of the constitution which is not even mentioned in the instrument.' " Cooley's Const. Limitations, p. 204. Long v. State, 58 Texas Crim. Rep., 212.

The relator contends, however, that the Act is condemned by the fact that it was passed at a special session of the Legislature and relates to a subject not presented by the Governor, Section 8, of Article 4, relating to the authority of the Governor to call an extra session, says: "His proclamation therefor shall state specifically the purposes for which the Legislature is convened." And section 40 of article 3, provides, that there shall be no legislation upon subjects other than those designated in the proclamation of the Governor calling such session or presented to them by the Governor. The Governor, in his proclamation, enumerated the following purposes: to enact a law to prohibit the sale of intoxicating liquors within ten miles of an army camp, to prohibit the sale of such liquors by any persons without a license, and to punish violations by felony, to prohibit the sale of such liquors to any person in uniform or enlisted in the military service. In a subsequent message the Governor elaborated his views upon the subjects mentioned, and in the course of his message used the following language: "I am not unmindful of the fact that as a means of accomplishing the results here sought, many people advocate statutory state-wide prohibition, with more or less confidence in its ultimate success. I do not assume for a moment to pass judgment upon the constitutionality of such a law, yet all admit that eminent lawyers have expressed the opinion that a law along this line is in conflict with the Constitution of the State. . .

"The need of the hour is immediate for efficient suppression of an admitted evil. The measure that is strong because of its certainty is to be preferred over a measure that in reaching too far may incur the risk of failing entirely."

The construction placed upon the provisions of the Constitution mentioned with reference to the special session of the Legislature, is that it is confined to the subjects for legislation presented by the Governor, but that it is not restricted in its discretion in the selection

of methods and means of effecting the purposes which are embraced within the subject submitted. Long v. State, 58 Texas Crim. Rep., 209; Brown v. State, 32 Texas Crim. Rep., 132. In the case last mentioned it is said: "It was not necessary, nor would it have been proper, for the Governor, in his proclamation, to have suggested in detail, the legislation desired. It was for the Legislature to determine what the legislation should be." In Baldwin's case, 21 Texas Crim. App., 592, this court said: "One of the purposes of convening the Legislature in special session is stated in said proclamation to be," to reduce the taxes, both *ad volorem* and occupation, so far as it may be found consistent with the support of an efficient State Government." This, it seems to us, embraces the whole subject of taxation, and authorizes any and all such legislation upon that subject as may be deemed necessary by the Legislature. To so legislate as to reduce the taxes, and at the same time provide for the support of an efficient State government, in our opinion, includes the power to levy taxes upon property and occupations not before taxed.

"All the Governor could properly do was done. He called the attention of the Legislature to the subject upon which, in his opinion, legislation was desired. That subject was taxation. It was not necessary, nor would it have been proper for him, in his proclamation, to have suggested in detail the legislation desired. It was for the Legislature to determine what the legislation should be."

The courts may determine whether the legislation in question is within the scope of the legislative authority, and, unless it is a clear usurpation of a power prohibited, the Act should not be condemned. Cooley, Const. Lim., p. 225.

We think the subject submitted by the Governor was legislation concerning intoxicating liquors and that the purpose was to restrict the traffic in intoxicating liquors and render them inaccessible to the many soldiers training in the State. Legislation upon such phases of the subject as in the judgment of the Legislature was appropriate to effect the purpose, was within the scope of the proclamation. The designation by the Governor of particular laws was not binding upon the Legislature. It was but suggestive of the views of the Governor relating to means of accomplishing the purpose for which the Legislature was called in special session. The session having been called by him to deal with the subject embraced in his message, the discretion within the scope of the limits of the Constitution was with the Legislature and beyond the control of the executive save in his exercise of the power to veto. Howard v. State, 77 Texas Crim. Rep., 185, 178 S. W. Rep., 506; Stockard v. Reed, 57 Texas Crim. App., 156, 121 S. W. Rep., 1144; State v. Tilletson, 43 Oklahoma, 478; Cyc., vol. 36, p. 944.

The Act in question received the approval of the Governor, and as said by Judge Ramsey in an opinion of this court: "While it is

undoubtly true that the construction which the Legislature and the executive place on the language of such a call is not conclusive upon the courts, it is entitled to great weight. Such call is in a sense the chart of the Legislature, and contains the limitations under which and in respect to which only they can act. When, therefore, acting under such a call they undertake to consider subjects and pass laws in response thereto, and such laws receive the approval of the executive, courts are and should of right be reluctant to hold that such action is not embraced in such call, and will not so declare unless the subject manifestly and clearly is not embraced therein." Long v. State, 58 Texas Crim. Rep., 212.

In my opinion the law under which relator is held is not unconstitutional and the application should be dismissed.

*Application dismissed.*

DAVIDSON, Presiding Judge (dissenting).

LATTIMORE, Judge (concurring).—This is an application for an original writ of *habeas corpus* filed in this court. There appears nothing before the court upon which any judgment may be predicated. The application alleges that relator is illegally restrained by the constable of precinct No. 1 of Dallas County, by virtue of a certain warrant of arrest, a copy of which is alleged to be attached. An inspection of said alleged copy shows there is no return of any officer thereon. There is no statement of any facts filed, and all of the matters on file in this court are mere pleadings and prove nothing. Ex parte Welburn, 70 Texas Crim. Rep., 464; Ex parte Roberson, 63 Texas Crim. Rep., 280; Ex parte Thomas 65 Texas Crim. Rep., 537, 145 S. W. Rep., 601; Ex parte Barnes, 73 Texas Crim. Rep., 583, 166 S. W. Rep., 728.

We cannot know from this record whether in fact any complaint is on file against relator, or whether or not in fact he is now, or has ever been, in custody. However, we observe here that the rule was early laid down by this court, that where no valid reason is shown why an application was not presented to the lower court, the writ would be refused by this court. Ex parte Lynn, 19 Texas Crim. App., 120; Ex parte Gregory, 20 Texas Crim. App., 210.

The writ, at the hands of this court, should be issued originally only in extraordinary cases; Ex parte Lambert, 37 Texas Crim. Rep., 435; Ex parte Pattison, 42 Texas Crim. Rep., 256; Ex parte Japan, 36 Texas Crim. Rep., 482. In the Japan case, *supra*, Judge Davidson says: "While the Constitution and statutes on this subject give to this court jurisdiction to issue writs of *habeas corpus*, yet we do not believe it was the intention of the lawmakers to constitute this tribunal a *nisi prius* court for the purpose of issuing and trying indiscriminately, all cases of *habeas corpus*. The Constitution and laws

of this state authorize us to review such case on appeal." Further in said opinion, the learned presiding Judge said: "This application could have been made to the county court of Bell County, if indeed applicant could have resorted to the writ of *habeas corpus* at all." These are apt and forceful words and apply with peculiar strength to the matter now before the court. An inspection of the documents attached to the application in the instant case, show that on February 27, 1919, a complaint was filed in the office of a justice of the peace at Dallas, the charging part of which complaint is as follows: "I, M. G. Kennedy, being duly sworn, do state on my oath, that in said State and in the county of Dallas, on the 24th day of December, 1918, Ed Davis did then and there unlawfully manufacture spirituous, vinous and malt liquors capable of producing intoxication, and not to be used for medicinal, scientific or sacramental purposes, against the peace and dignity of the State;" and that on the same day this application was prepared and sworn to, and on the following day the same was filed in this court. As stated, whether relator was ever actually arrested, does not appear. Whether any writ was ever issued or served is likewise not shown, nor is there any answer or return of any officer or other person showing that he holds the relator in restraint. The entire proceeding might be an attempt to evade the usual and proper method and channel by which questions and causes should be brought before this court, and might be an effort to obtain from this court an opinion on some phase of the prohibitory laws. We observe further that the offense, if any, charged against relator, is a felony and the only jurisdiction of the justice court of Dallas County was that of an examining magistrate. In such case this court has uniformly declined to interfere with the jurisdiction of such magistrate by awarding a writ of *habeas corpus* before a hearing and judgment in such trial court. Such court is a court of competent jurisdiction and the presumption is that its judgment will follow the law. Ex parte McCorkle, 29 Texas Crim. App., 20 and authorities cited; Ex parte Krug, 60 S. W. Rep., 38. Let us state again that when a case is pending before a court of competent jurisdiction, this court will not award a writ of *habeas corpus* unless it is made to appear that the hearing in the court where such matter is pending, is being delayed to the relator's injury and that the writ has been refused by the local court having jurisdiction to hear and render judgment on the law and facts. This court has power to issue a writ and in an extraordinary case may compel or procure evidence necessary to a determination of the issues made thereunder, but in an ordinary case this court's jurisdiction is appellate and only in this way should such cases be brought here. For the reasons stated the application should be dismissed. It is the impression of the Assistant Attorney General that there was an agreed statement of facts filed, which has been misplaced and

that same shows that relator was in fact under restraint herein. We fail to find anything of that kind in the record, but in view of this, add to what we have already said, that the Acts of the Fourth Called Session of the Thirty-fifth Legislature make penal the manufacture of intoxicating liquors with certain exceptions and that there is nothing in the Constitution of the State which forbids such legislation. Said Act is composed of numerous sections forbidding various matters in connection with the liquor traffic. Section 1 of said Act contains nothing except the prohibtion of the manufacture of intoxicating liquors.

It is specifically provided in another section of said Act that if any part or section of said Act be held unconstitutional that this shall not affect the remainder. If the Meyer case, 84 Texas Crim. Rep., 288, be correct, which is not here discussed, the holding thereunder would not affect the provisions of said Act forbidding the manufacture of liquor. I am in accord with the doctrine that if the governor submit to a called session of the Legislature, legislation on any subject, the whole of such subject is thereby opened for such legislation as the lawmakers may enact relative thereto, and further think that the submission of liquor regulation to a called session of the Legislature by means of what might be called the creation of a zone, opens up the whole subject of liquor regulation. It follows that whether a statement of facts was filed or not adhering to the rules hereinbefore announced, this application should be dismissed and relator remanded to the custody of the constable of precinct No. 1 of Dallas County.

*Dismissed.*

DAVIDSON, Presiding Judge (dissenting).—Relator was charged with manufacturing intoxicants in violation of an Act passed by the Fourth Called Session of the Thirty-fifth Legislature, p. 37, which prohibits the sale, manufacture, transportation and solicitation of orders for sale of intoxicants. This legislation had for its central thought and controlling and only purpose making Texas a completely "dry" State, and the abrogation of the local option provision of the Constitution, which is Article 16, Section 20. To make this effective, the sale, manufacture, shipment, and solicitation of orders involving sales were prohibited. The evident purpose was to completely substitute Article 16, Section 20, *supra*, by this piece of legislation. The prohibition of the sale, manufacture, transportation and solicitation of orders for selling was only incidental to the main purpose, which was placing under complete prohibition the State in its entirety. The prohibition of sale would not and could not accomplish this. It was, therefore, necessary to include the other inhibitions. The section of the Act prohibiting the sale was held to be unconstitutional in Ex parte Myer, 84 Texas Crim. Rep., 288, 207 S. W. Rep., 100, as being in conflict with and the attempted abrogation of said Article 16, Sec-

tion 20, *supra,* with its downfall the other inhibitions passed. They were so interwoven with and necessary to prevent selling that they could not legally stand. These provisions are not severable. Western Union Telegraph Co. v. State, 62 Texas, 630; Ex parte Massey, 49 Texas Crim. Rep., 64; State v. Hamey, 65 S. W. Rep., 949; Ex parte Woods, 52 Texas Crim. Rep., 575.

The Act under consideration cannot be regarded as a regulation. It is drastic in its prohibitory requirements, and leaves nothing to regulate, unless it be as applied to intoxicants to be used in sacramental, scientific, medicinal and mechanical purposes. At the same called session there were other Acts passed prohibiting and regulating the sale of intoxicants. One of these, the zone law, was held to be regulatory. Ex parte Hollingsworth, 83 Texas Crim. Rep., 400, 203 S. W. Rep., 1102. Two other acts, pp. 9 and 10, prohibited selling without license. These latter Acts amended previous statutes so as to change them from misdemeanors to felonies. Another Act, p. 36, amended Article 7447, Rev. Civ. Stats., as therein stated, so as to prohibit license under circumstances stated in the Act. Another Act, p. 57, prohibits transportation of intoxicants into local option territory with stated exceptions and exemptions. These are all in conflict with the State-wide Act, and in conflict with other statutes of prior Legislatures, and with each other.

That the Legislature cannot repeal Article 16, Section 20 of the Constitution, is placed beyond discussion. All decisions so hold. Robertson v. State, 5 Texas Crim. App., 155; Holly v. State, 14 Texas Crim. App., 505; Dawson v. State, 25 Texas Crim. App., 670; Lewis v. State, 58 Texas Crim. Rep., 351; Ex parte Myer, 84 Texas Crim. Rep., 288, 207 S. W. Rep., 100; State v. Texas Brewing Co., 106 Texas, 121; Ex parte Dupree, 101 Texas, 150; Dupree v. State, 102 Texas, 455. Legislation in aid of its enforcement may be enacted, but none in conflict can be sustained. See above cited cases.

The Act under consideration applies to the State in its entirety by the legislative enactment, while Article 16, Section 20, applies locally to counties and subdivisions, and made operative only by referendum vote, which is the exercise of primary sovereignty. State v. Texas Brewing Co., *supra,* and other cases above cited. When thus tested local option laws have the same force and effect as the Constitution itself, and are placed beyond the police power to annul or repeal. Same authorities. Partial prohibition under Article 16, Section 20, and total statutory prohibition for the State, cannot exist at the same time. The Constitution is supreme and must prevail. Statutory prohibition must fail. The Constitution set the limit for prohibition, and limits the Legislature. It limits also the Governor in relation to called session of the legislature.

Prior to the enactment of this Act it was legal to solicit for sales and ship from regulated territories into prohibition districts, and

even to sell in prohibition districts under specified exceptions and
license tax. Rev. Civil Statutes, Articles cited later herein. State
v. Texas Brewing Co., 106 Texas, 121; Bruce v. State, 35 Texas
Crim. Rep., 53; Ex parte Massey, 49 Texas Crim. Rep., 62; Snearly
v. State, 40 Texas Crim. Rep., 504; Edmonson v. State, 64 Texas
Crim. Rep., 413; Keller v. State, 87 S. W. Rep., 661; Parker v. State,
48 Texas Crim. Rep., 69; Golightly v. State, 49 Texas Crim. Rep., 44.
For further cases see 5 Rose's Notes, p. 1095.

Chief Justice Brown, in State v. Texas Brewing Company, *supra*,
speaking of the inviolability of the local option law, said:

"All powers of government reside in the people; and the officials
of the different departments exercise delegated authority; . . .
These departments and officials do not act, nor can they as from
original authority or power. All are subordinate to the Constitution,
and it to the 'inherent power of the people.'" He further said:
"But the section of the Constitution quoted provides a method—a
referendum—by which the voters of a given territory may exercise the
sovereign power of legislating upon this subject, which places the
law adopted by them above legislative authority, as if it had been
embraced in the Constitution, and we must so consider the local option
law adopted by the voters of Clay county, for that, like the Constitu-
tion, is the exercise of primary sovereignty; therefore what is pro-
hibited by the local option law to be done in Clay county, as to sale
of intoxicating liquors, cannot be authorized by the Legislature to
be done there." Our Constitution nowhere provides for, authorizes,
or even contemplates laws for prohibition, or local option in any
territory within the State or subdivision thereof, except and only by
the voters of the same. It is beyond the power of the Legislature
to negative this provision. Ex parte Myer, *supra*, and other cases.

The Act under consideration is attempted prohibition legislation
in direct opposition to and subversive of the local option laws where
operative, and is an attempt to abrogate and render nugatory Article
16, Section 20. The Legislature is powerless to enact prohibition in
any portion of the State. Ex parte Hollingsworth, and Ex parte
Myer, *supra*, Article 16, Section 20, monopolizes the subject. This Act
does not stop here. It repeals all license laws pertaining to intoxi-
cants, even those passed at the same session. Acts Fourth Called
Session, Thirty-fifth Legislature, Sec. 6b, p. 39. It is there pro-
vided that, "on and after the taking effect of this Act, no officer or
court of this State shall be authorized to issue or renew any license
purporting to authorize the sale of spirituous, vinous or malt liquors,
or medicated bitters, capable of producing intoxication, except as
provided in this Act, and all licenses heretofore issued for such sale
and out standing when this act becomes effective shall become null and
of no effect." This is emphatic language, sweeping in purpose, and
if legal, complete in its effect. It would, if valid, cancel all such

licenses and tax, and inhibit further license or tax. Among other laws coming within this repealing clause is that which levies and authorizes license in local option territory for soliciting orders for sale of intoxicants. Rev. Civil Stats., Art. 7479. The law authorizing keeping cold storages in such territory. Rev. Civil Stats., Art. 7480, as well as handling shipments under C. O. D. Same, Art. 7483. It would repeal statutes authorizing shipments into such territory when sale occurred in regulated territory. Same, Arts. 7379, 7393, 7394; Arts. 606, 606g, 662i. I Vernon's Ann. P. C., p. 326; 1 Branch's Ann. P. C., p. 718, and those statutes which permitted the specified sales in Rev. Civil Stats., Arts. 7428, 7429, 7430, 7431, as well as the authorized license therefor. Same, Art. 7467. It would abrogate the granted authority for soliciting orders for sale in such territory after paying the authorized tax and securing license for such purpose. Same, Art. 7479. It would repeal Revised Civil Statutes, Art. 7432, Branch's P. C., Art. 613, p. 727; 1 Vernon's Ann. P. C., Art. 606n, p. 326, which exempts those engaged in the "planting or growing of a vineyard to ship, transport, carry or deliver, any grape juice or wine made by him from grapes so grown to any person within the limits of any territory in this State in which the sale of intoxicating liquors is permitted under the laws of this State." It would abolish Art. 140 Branch's P. C., p. 400, which punishes officers for failure of duty in regard to collecting required taxes and issuing necessary license to sell intoxicants. It would repeal all statutes permitting and authorizing sale of intoxicants in non-local option territory at wholesale and retail. Branch's Ann. P. C., Arts. 611, 612, pp. 724, 725, and those enactments by the same called session, pp. 9, 10 and 36. It would extinguish all bonds required from dealers in intoxicants. These statutes are regulatory in their nature and provisions, and require licenses issued authorizing such business. Under Sec. 6b these were rendered inoperative—repealed.

In Sec. 7, however, of the same Act, p. 39, it is further enacted that: "This act *shall be cumulative of all laws in force* in the State of Texas, and of *all acts* of the *Fourth Called Special Session* of the Thirty-fifth Legislature *prohibiting* and *regulating* the *sale* of *intoxicating* liquors, and it is *expressly provided* that *no law now in force* in this State *prohibiting* or *regulating the sale of intoxicating liquors,* or *any act* of the Fourth Called Special Session of the Thirty-fifth Legislature *prohibiting* or *regulating the sale of intoxicating* liquors is repealed hereby, but *all such laws and acts shall remain in full force and effect.*"

Secs. 6-b and 7 of the State wide Act are contradictory and directly in conflict with each other. They cannot both stand. Nor is it possible to reconcile this sweeping repealing section 6-b with Section 7 which expressly sets it at naught, and perpetuates all laws the former section repealed. These incongruities and conflicts, repugnances

and want of definiteness and coherence would render the act invalid. Branchs Ann. P. C. Arts. 1, 3, 6 and 9, and authorities thereunder collated; French v. State, 14 Texas Crim. App., 76. It is also in conflict with the transportation act of the same Legislature, p. 57. This latter Act applies to local option territory which the State-wide repeals.

Again, the central point around which all sections of this Act revolve and in which the whole Act centers is absolute prohibition throughout the State. Without it none of its provisions would have found place, and were only enacted to carry out the main purpose to enact and put in force State-wide prohibition. They were not intended to be and are not severable. When the several parts of an act are dependent one upon the other so that it cannot be presumed the Legislature would have passed it without intending that all should stand, then the whole act must fall if a part is unconstitutional. Western U. T. Co. v. State, 62 Texas 630; Ex parte Massey, 49 Texas Crim. Rep., 64, 65; State v. Hamey, 65 S. W. Rep., 949; Ex parte Woods, 52 Texas Crim. Rep., 575. For this reason the Act is invalid. Much stronger would the reasoning be where all the provisions were a part of and necessary to the main and only purpose of the legislation.

There is another reason why this Act is unconstitutional and void. It was passed at a called session of the Legislature. The Governor issuing his proclamation did not specify the matter of State-wide prohibition, nor the manufacture, transportation, or solicitation for sale of intoxicants as connected with such prohibition, either State-wide or local option, as required by Article 4, Section 8, of the Constitution. It ordains that, "The Governor may, on extraordinary occasions, convene the Legislature. . . His proclamation therefore shall state *specifically* the purpose for which the legislature is convened." Nor did he while that body was in session authorize it to enact such legislation. Const., Art. 3, Sec. 4. That section provides that: "When the Legislature shall be convened in special session, there shall be no legislation upon subjects other than those designated in the proclamation of the governor calling such session, or presented to them by the governor; and no such session shall be of longer duration than thirty days."

An inspection of the proclamation issued by the Governor and his communications with and to the Legislature do not disclose any suggestion from him that he submitted for their consideration the matters contained in the provisions of the State wide prohibition act. Neither does it directly nor indirectly include the question of local option. His nearest approach to such matter is to be found in the following language:

"I am not unmindful of the fact that as a means of accomplishing the results here sought many people advocate statutory state-wide prohibition, with more or less confidence of its ultimate success. I

do not assume for a moment to pass judgment upon the constitutionality of such a law, yet all admit that eminent lawyers have expressed the opinion that a law along this line is in conflict with the Constitution of the State.

"The zone law, however, is deemed to be in the nature of a regulatory rather than a prohibitory act, and involves merely the exercise of that police power with which the State is fully clothed do deal with the barter, sale and exchange of liquor. In other words, it is indicated that statutory prohibition would offer the possibility of vigorous contest in the courts, while a zone law would not be open to successful attack through court procedure.

"The need of the hour is immediate for efficient suppression of an admitted evil. The measure that is strong because of its certainty is to be preferred over a measure that in reaching too far may incur the risk of failing entirely.'

A fair construction of this language does not convey but excludes the idea and conclusion that the Governor submitted or intended to submit State-wide prohibition, or the manufacture of intoxicants, for legislative action. It does not allude even to local option legislation. It rather fixes the conclusion that he neither submitted, nor intended to submit either. He limited the suggestion to the matter of a zone law. His language is all sufficiently plain why he submitted one and did not and would not submit the other matters. There was no reason for submitting the zone law had he submitted State-wide prohibition, for the State-wide act would have completely covered every inch of State territory, and if valid would have prevented sales to every one, soldier or citizen, within the State's entire limits. There could have been no possible reason for a zone law if State-wide prohibition was enacted. State-wide acts cover all territory; zone laws but a limited section. They are in direct conflict, one being only regulatory, the other severely prohibitory. Their purposes were totally repugnant with each other.

Article 3, section 40, supra, is mandatory, has been so held, and should be. Casino v. State, 34 Texas Crim. Rep., 769; Ex parte Wolters, 64 Texas Crim. Rep., 238; Wells v. Mo. Pac. Ry., 19 S. W. Rep., 530. It is useless to cite other cases in support of that proposition. The cases of Brown v. State, 32 Texas Crim. Rep., 119, and Long v. State, 58 Texas Crim. Rep., 209, harmonize with and support the stated proposition. In the Long case Judge Ramsey, speaking for the court, said: "The case of Casino v. State, supra, is also authority for the proposition that this section is mandatory (speaking of Art. 3, sec. 40), and that where an Act has been passed at a special session on a subject not embraced in the Governor's proclamation, his approval cannot make it valid, and that an act passed at such special session within the purview of such call is, and by the courts will be declared to be, unconstitutional. By inference, if not directly, this

view is sustained by the case of Brown v. State, 32 Texas Crim. Rep., 119. The approval of the Act by the Governor adds no sanctity to the legislation. In his approval of the act he expressly states he did not authorize such act, but adopted it on account of "the superior wisdom of the Legislature" in passing it.

No rule of fair intendment or construction should hold otherwise if mandatory provisions of the Constitution are to obtain or be maintained, and no such rule would bring the statutory State wide Act within the Governor's proclamation or communication with the Legislature in the language he employed in regard to the zone matter. The conclusion cannot be justified that the language mentioned intended a zone law should be enacted covering the State in its entirety, even as a regulatory measure much less as State wide prohibition. The purpose of the zone law was to regulate zones, and for this purpose only was it submitted by the Governor. If it can be held that the Governor approved this act, such approval did not validate the act or justify its passage. Casino v. State, *supra;* Wells v. Mo. Pac. Ry., 19 S. W. Rep., 530. For same discussion of the Governor's approval of this act, see dissent in Ex parte Fulton, 86 Texas Crim. Rep., 149.

There are other interesting questions, but enough has been said to show that the State wide act, including the manufacturing phase, is unconstitutional and void. All phases of the amendment of the Constitution substituting Article 16, Section 20, in recent election are here pretermitted from discussion.

The applicant ought to be ordered discharged.