**LOVE v. ROCKWALL INDEPENDENT SCHOOL DIST. (No. 293–3558.)**

(Commission of Appeals of Texas, Section B. March 15, 1922.)

1. Appeal and error ⊚⟾909(5)—Assumed that school bonds were properly approved, when no contention made to contrary.

Where the record discloses that common school district bonds were legally issued and sold, and no other contention is made by any of the parties, it will be assumed as a fact that before they were offered for sale they had been approved by the Attorney General, as required by law.

2. Schools and school districts ⊚⟾97(6)—Approval by Attorney General of bond issue need not be obtained until bonds are offered for sale.

Under Gen. Laws 1905, c. 124, § 3, Gen. Laws 1909, c. 12, § 154, Gen. Laws 1921, c. 24, and Vernon's Sayles' Ann. Civ. St. 1914, art. 2737, relative to bond issues by independent school districts, and Loc. & Sp. Laws 1913, c. 116, § 30, relative to bond issues by the district thereby created, the approval of independent school district bonds by the Attorney General is not a condition precedent to their issuance or the levy and collection of a tax for their payment, but need only be obtained when they are offered for sale.

3. Schools and school districts ⊚⟾97(6)—No constitutional requirement for approval of bonds by Attorney General.

Neither Const. art. 7, § 3, relative to school district bonds, nor any other provision of the Constitution, requires the Attorney General to pass on the bonds of independent school districts.

4. Schools and school districts ⊚⟾41(2)—Territory in independent district outside old district may be taxed to pay old district's bonds by vote of voters.

Where an independent school district embraced an old district and additional territory, and the voters of the new district voted to levy a tax to pay bonds of the old district, property outside the old district could be so taxed.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by A. E. Love against the Rockwall Independent School District. A judgment denying an injunction was affirmed by the Court of Civil Appeals (225 S. W. 263), and plaintiff brings error. Affirmed.

A. H. Mount, of Dallas, for plaintiff in error.

T. B. Ridgell, of Breckenridge, for defendant in error.

POWELL, J. In 1909, Rockwall county common school district No. 2 legally issued and sold its bonds in the sum of $25,000, with which amount of money the trustees of said district built and equipped a school building within its borders. Adequate taxes were levied and collected each year thereafter for the payment annually of the interest on said bonds as well as the accumulation of a sinking fund for their retirement at maturity.

In 1913, the Thirty-Third Legislature passed a special act, creating the Rockwall independent school district. See Local and Special Laws Passed at the Regular Session of the Thirty-Third Legislature, p. 451. This act was rather typical of its kind, and provided, among other things, for the taking over by the independent district of the property of the common school district as aforesaid. The latter district was now included within the boundaries of the former. It was further provided that the new district could, upon a vote of its people, issue refunding bonds for the balance then due upon the common school district bonds aforesaid. Said act permitted the people of the district, of course, to issue bonds for improvements of any kind within the district, so long as the bonds did not exceed the Constitutional limitations.

In August, 1917, an election was had in the new district for the purpose of determining whether or not it would issue bonds in the sum of $18,500 for the purpose of refunding, paying off, or taking up the remaining common school district bonds aforesaid. The election was had and the bonds authorized. At the same election the people voted a tax sufficient to care for the bonds voted at the same time. Almost immediately after this election, the school board met, canvassed the returns, and declared the result of the election. At the same time it levied the tax which had been voted by the people as aforesaid.

Early in 1918, A. E. Love, a taxpayer owning property in said district, part of which was situated in the old common school district and part in the extended or new district, entered his suit in the district court of Rockwall county, asking an injunction restraining the collection of the tax for the refunding bonds. He prayed for the injunction, relying mainly upon two grounds: (1) That a board of trustees of an independent school district has no authority to levy and collect taxes to pay a bonded indebtedness until the record authorizing the issuance of such bonds has been approved by the Attorney General; (2) that the land located within the new district, outside of and beyond the limits of the old common school district, could not be taxed to pay the debts of the latter, even though so assessed by a majority vote of the people of the enlarged or extended district.

The district court refused the injunction.

⊚⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Thereupon Love appealed his case to the Court of Civil Appeals at Dallas, where the judgment of the district court was affirmed. See 225 S. W. 263. Love applied to the Supreme Court for writ of error, and his application was granted.

At the very threshold of our opinion we desire to direct attention to the following paragraph in the opinion of the Court of Civil Appeals, to wit:

"The record shows that at the time the Legislature instituted the present independent school district there existed the common school district No. 2, which last district was added to said independent school district, and at the same time there was added about three miles of adjacent territory, all of which now constitute said independent school district. Before the passage of the act constituting said district as it now exists, common school district No. 2 had, prior thereto, legally ordered the issuance of $25,000 school bonds, which bonds have not been presented to the Attorney General for approval, which we hold does not invalidate the bonds, as such bonds are subject to such approval, and the neglect of said trustees in not presenting them for approval does not avoid the bonds, if the bonds when presented are approved. Therefore the fact of the bonds not having the approval in this instance does not affect the issuance of an injunction."

[1] The notation made by the Supreme Court in granting the writ of error herein shows that the court had this very statement in mind at the time. We have most carefully read the agreed statement of facts before us, upon which the case was tried, as well as all other papers in the record generally. There is absolutely no basis in the record for this finding of fact by the Court of Civil Appeals. In fact, the record discloses quite the contrary, and that the Rockwall common school district bonds in question were legally issued and sold. No other contention is anywhere made by any of the parties. Therefore we assume as a fact that, before the common school district bonds were offered for sale, they had been approved by the Attorney General as by law required. This erroneous statement of fact by the Court of Civil Appeals was evidently a mere inadvertence on its part. So we shall not further consider the validity of the original bonds, but confine our discussion to the necessity of the approval of the refunding bonds by the Attorney General before a tax for their payment could be levied and collected. In doing so we are considering the only contention raised in the application in this connection.

[2] Can an independent school district levy and collect taxes to care for its bonds before the record of the election has been approved by the Attorney General of Texas? In deciding this point a brief history of our statutes relative thereto will be helpful. In 1900 the Supreme Court of Texas, speaking through Justice Williams, in the case of Brownson v. Smith, Attorney General, 93 Tex. 614, 57 S. W. 570, held that there was no authority at that time imposing upon the Attorney General the duty of passing upon bonds of independent school districts. The court held that the only statute then in force, imposing upon the Attorney General the duty of acting upon any bonds, was article 918d, which is now article 619 of Vernon's Sayles' Revised Civil Statutes of Texas of 1914. That article provides that, when any county, city or town in Texas desires to issue bonds, they shall have the Attorney General pass upon and approve the record before offering them for sale.

In 1905 the Twenty-Ninth Legislature at its regular session passed an act for the general purpose of providing a more efficient system of public education. In that act (page 266 of General Laws of that Legislature) will be found authority, under certain circumstances, for passing upon independent school district bonds by the Attorney General. We quote the material part of section 3 on that page as follows:

"Hereafter when any county bonds or the bonds of any incorporated city or independent school district are offered for sale, the party offering or proposing to sell such bonds shall first submit them to the Attorney General of the state, who shall carefully inspect and examine the same in connection with the law under which they were issued, and shall diligently inquire into the facts and circumstances so far as may be necessary to determine the validity thereof."

[3] Section 3 of article 7 of the Constitution of our state, as adopted in 1909, reads as follows:

"One-fourth of the revenue derived from the state occupation taxes and a poll tax of one dollar on every male inhabitant of this state, between the ages of twenty-one and sixty years, shall be set apart annually for the benefit of the public free schools; and, in addition thereto, there shall be levied and collected an annual ad valorem state tax of such an amount, not to exceed twenty cents on the one hundred dollar valuation, as, with the available school fund arising from all other sources, will be sufficient to maintain and support the public free schools of this state for a period of not less than six months in each year; and the Legislature may also provide for the formation of school districts by general or special law, without the local notice required in other cases of special legislation; and all such school districts, whether created by general or special law, may embrace parts of two or more counties. And the Legislature shall be authorized to pass laws for the assessment and collection of taxes in all said districts, and for the management and control of the public school or schools of such district, whether such districts are composed of territory wholly within a county or in parts of two or more counties. And the Legislature may authorize an additional ad valorem tax to be levied and collected within all school districts, heretofore formed

or hereafter formed, for the further maintenance of public free schools, and the erection and equipment of school buildings therein: Provided, that a majority of the qualified property taxpaying voters of the district, voting at an election to be held for that purpose, shall vote such tax, not to exceed in any one year fifty cents on the one hundred dollar valuation of the property subject to taxation in such district, but the limitation upon the amount of school district tax herein authorized shall not apply to incorporated cities or towns, constituting separate and independent school districts."

This provision of the Constitution was in force when the Legislature created the Rockwall independent school district and when the instant suit was filed. · A reading of this section shows that the Legislature was given authority by the people of this state to pass laws for the assessment and collection of taxes in independent school districts; also it authorizes the Legislature to empower such districts to tax their people for permanent improvements. There were but two limitations upon the power of the Legislature in prescribing these rules. The tax could be levied only upon a majority vote of the taxpayers at an election held for that purpose, and the tax for all purposes must not exceed 50 cents on the $100. There is no constitutional requirement that the Attorney General pass upon the bonds of independent school districts.

In 1909 (Laws 1909, c. 12) an enabling act was passed by the Legislature, putting into effect section 3 of article 7 of our Constitution as it was adopted in 1908, and which was practically the same as section 3 of 1909, except for county line districts. The act of 1909 in part amended the act of 1905 hereinbefore referred to. We desire to call attention to two sections of the acts of 1909. During the regular session of the Thirty-First Legislature (Laws 1909, c. 110, § 3), what is now article 2737 of Vernon's Sayles' Statutes of 1914 was adopted. It is in identical language, except for additional kinds of bonds being named, with the provisions of the act of 1905 heretofore quoted. In other words, it continues to provide that, when independent school district bonds are offered for sale, they shall first be submitted to the Attorney General for his approval. At the regular session of the Thirty-First Legislature, 1909, on page 21 of its General Laws, will be found section 154, reading as follows:

"Trustees of incorporated districts that have been or may hereafter be incorporated under general or special laws, for school purposes only, shall have power to levy and collect an annual ad valorem tax not to exceed fifty cents on the one hundred dollars valuation of taxable property of the district for the maintenance of schools therein, and a tax not to exceed twenty-five cents on the one hundred dollars for the purchase of sites and the purchasing, construc-

tion, repairing or equipping public free school buildings within the 'limits of such incorporated districts: Provided, that the amount of maintenance tax, together with the amount of bond tax of the district, shall never exceed fifty cents on the one hundred dollars valuation of taxable property. Said trustees shall have power to issue coupon bonds of the district for building purposes, to be made payable not exceeding forty years from date, in such sums as they shall deem expedient, to bear interest not to exceed five per cent. per annum: Provided, that when such buildings are to be wooden the bonds herein provided for shall not run for a longer period than twenty years: Provided that the aggregate amount of bonds issued for the above named purpose shall never reach such an amount that the tax of twenty-five cents on the hundred dollars valuation of property in the district will not pay current interest and provide a sinking fund sufficient to pay the principal at maturity; and provided further, that no such tax shall be levied and no such bonds issued until after an election shall have been held wherein a majority of the taxpaying voters voting at said election shall have voted in favor of the levying of said tax, of the issuance of said bonds, or both, as the case may. be: Provided, that the specific rate of tax need not be determined in the election."

A reading of the statute just quoted shows clearly that the approval of the bond record by the Attorney General is not a condition precedent to the issuance of the bonds by the school board or the levying of a tax by the latter for the payment of the bonds.

In 1913 the special act creating the independent district in question was passed by the Legislature. It was a rather complete act, but, at least so far as the points under discussion are concerned, in entire harmony with the Constitution of our state and the general statutes thereof. The special act is not inconsistent with the latter in any way. In the very creation of this independent district, the Legislature expressly authorized the levy of the tax immediately upon a vote of a majority of the qualified electors. We quote from the act as follows:

"The vote of a majority of the qualified property taxpaying voters voting at the election being cast in favor of the tax, shall authorize the levy to be then immediately made by order of the board, and said board of trustees shall so order it." Section 19.

By section 30 of the same special act it is provided as follows:

"Before the bonds authorized by this act are *offered for sale*, the Attorney General shall officially certify to their validity in the same manner as is provided by law in cases where any court, city or county in this state offers bonds for sale."

The section of the special act just quoted is its only one mentioning the approval of the Attorney General. That provision, in line with the general statutes upon the subject,

requires that approval before the bonds are offered for sale. The act does not make such an approval a condition precedent to the issuance of the bonds or the levy of a tax for their payment. In fact, it expressly provides otherwise.

The regular session of the Thirty-Seventh Legislature, in 1921, passed an enabling act authorizing school districts to take advantage of the very recent educational amendment raising the tax limit for the support of public schools. In the act of 1921 the Legislature in great detail set out the requirements for the issuance of bonds by independent school districts. Under that law it is clearly provided that the bonds may be issued and the tax levied before the bonds are approved by the Attorney General. Said act provides that before the bonds are offered for sale they shall be so approved. See General Laws of the Regular Session of Thirty-Seventh Legislature, pp. 59, 60, and 61.

The Constitution and statutes of our state heretofore quoted and referred to are uniform, consistent, clear, and without ambiguity. From the very beginning independent school districts have been permitted to issue bonds and levy and collect a tax in payment thereof before they are approved by the Attorney General. There has been no variation from this rule to the present date. The only requirement is that the school board shall obtain the approval of the Attorney General before offering the bonds for sale. There is absolutely no evidence in the record in the case at bar that the Rockwall board was endeavoring to sell or otherwise dispose of the bonds in question without the approval of the Attorney General. The law fixes no time limit within which they shall be offered for sale. The record shows it was the intention of the board to sell or dispose of them shortly after the trial, and there was an explanation of the delay in the issuance of the bonds. The statement of facts shows that the board promised to lawfully issue the bonds within 60 days from the date of the trial. Under all these facts, the trial court was clearly justified in denying the injunction prayed for. No cause of action, in this connection, could be stated without alleging that the bonds were about to be sold without the approval of the Attorney General.

We have found no authority holding that the approval of an independent school district bond is a condition precedent to its issuance, or the levy and collection of a tax in support thereof. Counsel, in the application for writ of error, cites us to none. The law itself seems so clear to us that we may easily account for the scarcity of opinions of our courts upon the point. There can be no doubt about the necessity for the approval of the Attorney General before the bonds are sold. The special act creating this very district imposes this requirement. The general law is clear upon this point. That is a condition precedent to their legal sale. Many cases so hold.

It would seem that the approval by the Attorney General of these school bonds is primarily in the interest of the investor. Of course, his approval aids the people of the district very materially in finding a market for their bonds. The investors frequently reside at a great distance from the district in question, and would not be inclined, in many instances, to go to the district and look up the records. The approval of the Attorney General, especially with its strong legal presumptions, is worth much in assisting the sale of the bonds, and means nearly everything to the investor. Then, too, when the school board knows that, before a sale of bonds can be had, the record must be approved by the Attorney General, they realize the urgent need of strict compliance with the law. So the provision for the Attorney General's approval secures proper and legal action on the part of the officers in holding these elections and creating such debts. In that way the taxpayer is also materially benefited.

The local taxpayer in the district has every opportunity to known whether or not the law has been followed in the holding of the election, etc. At least, he has a great deal better opportunity than the distant purchaser of the bonds. If the school board does not, with reasonable diligence, obtain the approval of the Attorney General of a set of bonds before offering them for sale, then any taxpayer, who feels himself aggrieved, can certainly go into court and attack the election and the validity of the bonds. As we have already said, the law specifies certain conditions precedent to the issuance of the bonds by the board. If a taxpayer feels that the law in the premises, providing these conditions precedent, has not been complied with, he has his remedy. The courts are open to him. He can seek appropriate relief there. All that the Attorney General could do for him would be to see that the law, as written, had been followed. We must assume that the courts would likewise protect the taxpayer. So he has his adequate remedy.

In the case at bar the petition did not allege, in a single instance, the failure of the board to follow the law in any particular. Plaintiff merely contended that the law had not been complied with, because the Attorney General had not, up to that time, approved the bonds. He did not even allege that the Attorney General would probably not give his approval to the record when presented. As shown before, he was not, under the evidence, entitled to the relief prayed for by reason of the failure of the Attorney General to approve the bonds up to the time the suit was filed.

So far as the delay on the part of the school board in issuing the bonds and presenting the record to the Attorney General for his approval is concerned, the gravamen of Love's complaint is merely a neglect on the part of the board to promptly discharge what Love deemed to be its official duty. That being true, it occurs to us that Love's proper remedy, if any he had, would have been to pray for mandamus, compelling the school board to go ahead and perform its ministerial duty under the law. Perhaps the district court had this in mind in refusing the injunction upon this point.

At any rate, when the school board makes an effort to sell or otherwise dispose of the bonds in question, there will be ample time to hear the complaint of plaintiff in error in a court of competent jurisdiction. If the action of the board in disposing of the bonds amounts to a sale of the same under the law, then' such a disposition of the bonds will be unlawful, unless the approval of the Attorney General has first been had. It is worthy of note in this connection that the owner of the common school district bonds had the right to retain the old bonds and enforce their payment according to their terms. The record shows that the new bonds may simply amount to a renewal of the outstanding bonds of the old issue, or a mere assumption of that existing debt. We are not called upon to pass upon the question as to whether or not a delivery of these new bonds to the owner of the old' bonds, in payment and satisfaction of the old bonds, would be a sale of the new bonds within the meaning of the law. That question is not before us. The school board had not issued the new bonds at the time of the trial, and we do not know just what their final intention in this respect may be. According to the record, the board seemed still to have the option of paying off the original bondholder with the new bonds, or with cash realized from the sale of the latter to another.

[4] Plaintiff in error further contended that his property outside of and beyond the limits of the old common school district could not be taxed to pay the debts of the latter, even though the people in the added territory were reaping the benefit of $30,000 worth of property at a cost of $18,500, and although a majority of the qualified voters in the district, as enlarged and extended, had voted to pay and assume that debt. There is no merit in this contention. The Supreme Court of Texas, in 1912, in a very able opinion by Justice Dibrell, spoke upon this point as follows:

"A careful review of all the authorities to which we have been cited reveals nothing that would demand or authorize this court to place a different construction upon section 3, article 7, of the Constitution than that where an inde-pendent school district votes a special tax pursuant to the authority conferred by said section of the Constitution and afterwards extends the boundaries of such district, the existing special tax so authorized cannot be levied and collected against the property in such extension until such assessment is authorized by a vote of the qualified tax-paying voters of the district as extended." Crabb v. Celeste Independent School District, 105 Tex. 194, 146 S. W. 528, Ann. Cas. 1915B, 1146.

All the voters of the district, as enlarged, had an opportunity to participate in the election. A majority of those availing themselves of this opportunity voted to levy this tax on the district. They had a right to do so. and all the property in the district must bear its share of this burden.

We have carefully considered all points in the application, and have concluded that the district court entered the proper judgment in the case. We think the judgment of the Court of Civil Appeals, affirming it, was correct.

Therefore we recommend that the judgments of the district court and Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.