## BROWN v. TRUSCOTT INDEPENDENT SCHOOL. DIST. et al. (No. 573.)

Court of Civil Appeals of Texas. Eastland. June 21, 1929.

Rehearing Denied Oct. 4, 1929.

D. J. Brookreson and James A. Stephens, both of Benjamin, and Carrigan, Britain, Morgan & King, of Wichita Falls, for appellant.

C. D. Jessup, of Houston, and Dickson & Dickson, of Seymour, for appellees.

HICKMAN, C. J. The appeal is from an order of the court below sustaining a general demurrer, special exception, and plea in abatement to appellant's petition, and dismissing the suit. Under the views which we entertain, it will not be necessary for us to consider the action of the trial court in sustaining the special exception and plea in abatement, but only its action in sustaining the general demurrer. The petition to which the general demurrer was sustained covers fifteen large pages of the transcript, but may be epitomized as follows:

The plaintiff below, appellant here, sued H. C. Burt, doing business under the name of H. C. Burt & Co., the trustees of Truscott independent school district of Knox county, and the tax assessor and tax collector of such district, alleging, in substance:

That on the 19th day of April, 1909, common school district No. 3, in Knox county, was created by an order of the commissioners' court, which district shortly thereafter bonded itself to the extent of $8,000. That, after

the bonds had been voted, the commissioners' court extended the limits of the district so as to include about 4,100 acres of additional territory, 3,800 acres of which added territory belonged to the plaintiff. That thereafter the board of trustees levied a tax upon the property included in the added territory for the purpose of paying the interest and sinking fund on said $8,000 bond issue, and attempted to collect taxes on said added territory.

That in a suit instituted by plaintiff in the district court of Knox county the collection of such tax was enjoined, and the judgment enjoining same was never appealed from, but became final. That thereafter, in 1920, the Thirty-Sixth Legislature passed a special act (Loc. & Sp. Laws 36th Leg. 3d Called Sess. 1920, c. 93) undertaking to create the Truscott independent school district in Knox county, including within the boundaries of said independent districts the original territory in common school district No. 3 and also the territory which the commissioners' court had theretofore attempted to add thereto. Many allegations are made in the petition showing the unconstitutionality of the act of the Thirty-Sixth Legislature. These allegations will not be set out herein, for it seems to be conceded by both parties that such special act was unconstitutional. We shall therefore not further notice the special act of the Thirty-Sixth Legislature.

That thereafter the Thirty-Eighth Legislature passed a special act, creating the Truscott independent school district, including within its limits the territory described in the special act of the Thirty-Sixth Legislature. Said independent school district has been functioning through its trustees and officers since its creation. That, after the taking effect of the special act of the Thirty-Eighth Legislature, an election was held in said district on May 7, 1927, at which election three propositions were submitted to the voters of said district, to wit: (a) For maintenance tax; (b) for a tax of fifty cents on the $100 valuation of property for the purpose of creating interest and sinking fund on a bond issue of $40,000 to erect a new school building; and (c) for the assumption of the bonded indebtedness of $8,000 issued by common school district No. 3.

That all three of the propositions were carried. That the Attorney General approved $29,000 of the bonds of the $40,000 issue, which said $29,000 of bonds were sold to the defendant Burt. That the other $11,000 of said issue have not been sold or approved. That the trustees of the independent district created by the Thirty-Eighth Legislature levied and assessed taxes against plaintiff's property and the property of other persons situated in the added territory for the purpose, among other things, of paying the interest and providing a sinking fund to discharge the $8,000 bonded indebtedness of the old common school district No. 3, and paying the interest and providing a sinking fund to pay the $40,000 bond issue, and the tax collector of said district was attempting to collect such taxes from plaintiff.

It is then alleged that the special act of the Thirty-Eighth Legislature, attempting to create the Truscott independent school district, was unconstitutional and void, and repugnant to section 16, art. 1, and section 3, art. 7, of the State Constitution, in that such act did not provide any lawful means for the payment of the $8,000 bonded indebtedness then existing against a portion of the district, and because said act provided that the independent district acquired the property of common school district No. 3, without making any provision for the payment of debts against it. Follows then the allegation that, unless enjoined, the officers of the independent school district would levy and collect taxes against plaintiff's land situated in the added territory, for the payment of which said land was not liable.

It is further alleged that, prior to the ordering of the election for the purpose of voting the $40,000 bond issue, the defendant Burt came to the town of Truscott and entered into a contract with the trustees, by the terms of which Burt agreed that, in the event the bonds were voted, he would purchase the same, and the trustees, by an order placed on the minutes, agreed to sell to Burt the bonds which were thereafter to be voted. The petition further represents that, at the time the election to vote to assume the $8,000 bonded indebtedness was ordered, it was the intention of the trustees to wreck the old building which had been built with the proceeds of said $8,000 bond issue, and that, after said election was held, the trustees did destroy said building by having same torn down at an expense of $750, and realized from the salvage thereof less than $600.

A further allegation is made that the $40,000 bond issue was void because the petition and order for the election and the election notices stated that such bonds were to bear interest at the rate of 6 per cent. per annum, while the bonds actually issued by virtue of such election bear interest at the rate of 5¾ per cent. per annum.

The prayer was for judgment canceling the bonds and removing the lien thereby created from plaintiff's property, restraining defendants from attempting to collect taxes on plaintiff's land for the payment of the $8,000 bond issue, for a writ of injunction restraining the tax assessor from assessing said property and the tax collector from collecting taxes for any interest or sinking fund, and for a decree that the purported creation of the Truscott independent school district was illegal and void.

The special act of the Thirty-Eighth Legislature which was attacked was House Bill No.

176, chapter 17, Acts of the Thirty-Eighth Legislature, Second Called Session (1923). This act was pleaded in full in the petition, and consists of three sections besides the caption and the emergency clause. These three sections are as follows, to wit:

"Section 1. That the Truscott Independent School District is hereby created and established in Knox County, Texas, including within its limits the Truscott Independent School District as created by the Thirty-Sixth Legislature, Regular Session, with metes and bounds as follows: [Here follows the same description as that of Common School District Number 3, as enlarged, also Truscott Independent School District as attempted to be created by the Act of the Thirty-Sixth Legislature.]

"Section 2. The management and control of the public free schools of said Truscott Independence School District as created by this Act is hereby vested in a board of trustees composed of seven members; provided, that the trustees in charge of the public schools now in existence within the territory of said District shall serve as trustees of said Truscott Independent School District until the time for the next succeeding election for trustees of independent school districts as is provided by General Laws for the election of trustees in Independent School Districts organized for school purposes only; at which time seven trustees, who shall be resident citizens and qualified voters within said district, shall be elected and serve in accordance with the provisions of this Act and General Laws of the State.

"Section 3. The Said Truscott Independent School District, as created by this Act, shall have and exercise and is hereby vested with all the rights, powers, privileges, and duties of a town incorporated under the General Laws of this State for free school purposes only, and the board of trustees of the said Truscott Independent School District shall have and exercise all of the rights, powers, privileges, and duties conferred and imposed by the General Laws of Texas upon the trustees of independent school districts incorporated under the General Laws of the State for free school purposes only."

■ The controlling question of law presented is the constitutionality of the above act. On the authority, principally, of Burns v. Dilley County Line Independent School District et al. (Tex. Com. App.) 295 S. W. 1091, 1094, and Millhollon v. Stanton Independent School District (Tex. Com. App.) 231 S. W. 332, it is urged that the special act is repugnant to various provisions of the State and Federal Constitutions. None of the vices condemned in those cases are contained in the above act. It does not in any manner undertake to impose any character of tax upon the added territory. It is silent with reference thereto. It creates the district, defines its boundaries, provides for its trustees and vests in the district the rights, powers, privileges and duties of a town incorporated under the general laws for free school purposes, and confers upon the board of trustees such rights, powers, privileges, and duties as are conferred and imposed by the general law upon trustees of independent school districts incorporated under the general law for free school purposes only. The particular provisions of the creating acts in the Burns and Millhollon Cases which rendered such acts void are not contained in the special act under investigation. There being no question that the Legislature at that time had the power to pass such law, and there being no provision therein contrary to the Constitution, we can perceive no reason why the special act was not a valid exercise of legislative power. It is therefore our conclusion that the act in question is not unconstitutional.

■■ This leads us to the most difficult question presented. It is urged that an independent school district created under the general law has no power to assume an outstanding bonded indebtedness existing against a portion of such district, and that there is no provision of the general law authorizing an election in an independent school district for the purpose of determining whether such district shall assume the outstanding bonded indebtedness of a portion thereof. We are cited to no article in the statute expressly providing that, when territory is added to a school district, such district as extended may vote upon the assumption of the bonded indebtedness of the old district. Clearly, before a valid tax can be voted, legislative authority, either express or implied, must exist for holding the election. We know of no express authority therefor, and have made a rather careful study of the authorities with the view of deciding whether it has been determined that such authority is implied.

The Constitution, art. 7, § 3, has been construed by our Supreme Court in the case of Crabb v. Celeste Independent School District, 105 Tex. 194, 146 S. W. 528, 533, 39 L. R. A. (N. S.) 601, in the following language: "Where an independent school district votes a special tax, pursuant to the authority conferred by said section of the Constitution, and afterwards extends the boundaries of such district, the existing special tax so authorized cannot be levied and collected against the property in such extension until such assessment is authorized by a vote of the qualified taxpaying voters of the district as extended."

In the case of Yorktown Independent School District v. Afflerbach, 12 S.W.(2d) 130, the opinion in which was adopted by the Supreme Court, Judge Speer of the Commission of Appeals in discussing section 3, art. 7, of the Constitution says that the language thereof is broad enough to include the levying of taxes to discharge the assumption of exist-

ing bonds issued for the purpose of maintaining a public free school or the erection and equipment of school buildings.

The effect of this construction is that by implication the Constitution permits the Legislature to authorize such an election. There is no question but that under general statutes, such as article 2784, Rev. St. 1925, an independent school district may vote a bond tax. It may vote bonds for the purpose of purchasing sites for, building, and equipping school buildings. It seems to us that the same reason which would lead to the above construction of article 7, § 3, of the Constitution would lead to a construction of the general statutes as an implied authorization by the Legislature to a school district to hold an election like the one held in the instant case. In other words, if the Constitution impliedly conferred the power to assume, the statutes have impliedly conferred the authority to hold an election to assume. The recorded cases abound in expressions that, under the general law an extended school district has the power and authority to hold just such an election as was held in the instant case.

In the case of Burns v. Dilley County Line Independent School District, supra, it is stated: "If the special act was silent in respect to the mode whereby the new district could assume the obligation of the old district, the general law on that subject would prevail."

In Tilton v. Dayton Independent School District (Tex. Civ. App.) 2 S.W.(2d) 889, 892, it is said: "It is well settled that where an independent school district votes bonds and a maintenance tax rate pursuant to the authority conferred by the Constitution, and after the bonds of said district are extended, the qualified tax paying voters of the entire district as extended may vote to assume the indebtedness of the old district and to levy and collect the maintenance tax rate of the old district against the property in the district as extended." Citing many authorities.

In the case of Willamar Independent School District v. Lyford Independent School District et al. (Tex. Civ. App.) 8 S.W.(2d) 239, 240, in an opinion by Chief Justice Fly of the San Antonio court, it is said: "'The general law gave them the authority to call an election and submit to the voters the question of assuming the debts of that part of the district segregated from the old district."

Other expressions could be cited, but the foregoing are sufficient to disclose that uniformly our courts have regarded the general statutes as sufficient authority to authorize an election within an independent school district for the purpose of levying taxes for the discharge of bonded indebtedness on a portion thereof. None of the reported cases present exactly the same situation as that presented in the act under construction, but, if a district incorporated under the general law has the authority to hold such an election, clearly

the district in the instant case has such authority, for it was expressly clothed with all authority of an independent school district organized under the general law. It seems to us that authority to vote bonds, to increase a tax, and to enlarge a district implies the authority for an enlarged district to vote a tax for the purpose of discharging bonded indebtedness of the old district before it was enlarged and extended, as otherwise territory added to an independent school district organized under the general law could never assume its pro rata part of the obligations of the district, the benefits of which it shares, and there would exist in the enlarged district a greater tax rate upon the old territory than upon the added portion. The taxes within such district would not, therefore, be equal and uniform.

■ It is further presented that, according to the allegations of the petition in the instant case, the old schoolhouse into which the proceeds of the $8,000 bond issue went was practically worthless at the time the election was held, and the contention is urged that the tax levy was void as to the added territory in so far as such levy was for the purpose of discharging that bond issue, because the property owners in the added territory were by the vote of persons residing in the original district, compelled to assume the indebtedness, without receiving any benefits or consideration therefor. We cannot sustain this contention. If the district as enlarged and extended had the power and authority to vote to assume the indebtedness of the original district, then such authority did not depend upon the fact that such extended district received a full consideration in the form of buildings for such assumption. There is no authority established by law for determining the value of the consideration to be received by an extended district for assuming such indebtedness. To validate such tax levy only in proportion that the value of the building bears to the amount of the bonds would lead to hopeless confusion. There are many benefits derived by those in the enlarged districts which cannot be definitely ascertained or measured.

■ We overrule the contention that the issue of $29,000 in bonds was void because they were voted upon as 6 per cent. bonds and were issued by the trustees as 5¾ per cent. bonds. It is not necessary to issue bonds at the maximum rate of interest authorized by the vote. 44 C. J. p. 1208. As said in 28 Cyc. 1592: "The validity of municipal bonds will not be affected by the fact that they provide for interest at a lesser rate than that which they are authorized to bear."

■ The plea of res adjudicata is not sustained. The judgment relied upon in support of this plea in the petition is described therein as a judgment enjoining common school district No. 3 from attempting to levy a tax upon appellant's lands. Appellees were not parties

to that suit, and cannot, therefore, be bound by that judgment. The right of the independent district to levy and collect the tax is not at all dependent upon whether or not the common school district had that right.

It is our opinion that the trial court did not err in sustaining the general demurrer to appellant's petition, and the judgment of that court dismissing the case upon appellant's declining to amend is affirmed.

FUNDERBURK, J. (dissenting). The opinion of the majority recognizes that there must be legislative authority, either express or implied, to authorize a school district to vote to assume the outstanding bonded indebtedness of another district, the territory of which has been included in a new district. As to the correctness of that proposition, there is no room for difference of opinion. It is also recognized in the majority opinion that in this case there was no *express* legislative authority for holding the election that was held in the Truscott independent school district to determine that question. There is therefore squarely presented the question of whether or not there exists by implication any general law applicable to the class of districts in question which authorizes the holding of such election. The writer takes the view that there was no such lawful authority. The Constitution provides: "And the legislature may authorize an additional ad valorem tax to be levied and collected within all school districts, * * * for the further maintenance of public free schools, and the erection and equipment of school buildings therein; provided, that a majority of the qualified property taxpaying voters of the district, voting at an election to be held for that purpose, shall vote such tax," etc. Constitution, art. 7, § 3.

If the Legislature itself has authority to authorize the holding of an election for the purpose mentioned, such authority must be implied from the provisions of the Constitution above quoted. Since constitutional provisions are at once both enabling and limiting, the last-named characteristic has the effect of restricting legislative power to one or both of the two things mentioned, namely, (1) "for the further maintenance of public free school," and (2) "for the erection and equipment of school buildings therein." It is manifest that the constitutional provisions require legislation. In other words, they are not self-operative. For instance, it will perhaps not be gainsaid that, if the Legislature only enacts that a tax may be levied and collected "for the further maintenance of public free schools," no district could issue bonds "for the erection and equipment of school buildings." On the other hand, if the only legislation under authority of the said constitutional provision was to levy a tax "for the purpose of the erection and equipment of school buildings," there would be no lawful authority for a school district to vote a maintenance tax.

If, as held by the majority, there exists by implication legislative authority for a district to assume the bonded indebtedness of a former district, it becomes an interesting inquiry as to which of the two purposes named in the Constitution is such authority referable? Does it come under the authority to authorize by an election a tax "for the further maintenance of public free schools," or "for the erection and equipment of school buildings"? It is perhaps safe to say that such authority must exist, if at all, under the latter. Were the question one of first impression, the writer could never bring himself to agree that such authority can be implied from said constitutional provision. The question would seem to me to be governed, for example, by the same principle upon which it is held that authority to collect a bond or note does not imply the authority to accept in payment another bond or note. In each case there is involved a substitution of different obligations in such a way as to be subject to the same principle. But the question of constitutional authority appears to have been settled favorably to the existence of authority in the Legislature to authorize school districts to vote upon themselves the assumption of the pre-existing indebtedness theretofore voted upon a part of the district. Yorktown Independent School District v. Afflerbach (Tex. Com. App.) 12 S.W.(2d) 130.

It is therefore not the purpose of the writer further to discuss that question, or call in question the correctness of the said decision.

The question here is: Conceding that the Legislature had the power, by either general or special law, to authorize an election in the Truscott independent school district to determine whether or not that district would assume the indebtedness of the former district, has the Legislature in fact exercised such authority by the enactment of any law? As pointed out in the majority opinion, a number of decisions have stated that there was such authority under the general laws. If so, it is a matter, it seems to me, that should be capable of easy and ready verification. Under the special act of the Legislature creating the Truscott independent school district it is provided that that district shall have and exercise and be vested with all the rights, powers, privileges, and duties of a town incorporated under the general laws for free school purposes only, and the board of trustees of said district shall have and exercise all of the rights, powers, privileges, and duties conferred and imposed by the general laws upon the trustees of independent school districts incorporated under the general laws of the state for free school purposes only. This being the full measure of the grant of authority to such district, what provision or provisions of any general law applying to a town incorporated under the general laws for free school purposes only, or to the trustees of independent

school districts, implies the authority in question? I think it safe to say that, if any such authority is to be implied from any general law, such general law is comprised within some one or more of articles 2784, 2785, 2786, 2787a, 2788, 2789, and 2790 of the Revised Statutes of 1925. Article 2784 authorizes trustees of an independent school district "to levy and cause to be collected the annual taxes and to issue the bonds" therein authorized "subject to the following provisions: * * * In independent districts for the maintenance of schools therein, an ad valorem tax, not to exceed one dollar on the one hundred dollars valuation of taxable property of the district. * * * In * * * independent districts, for the purchase, construction, repair or equipment of public free school buildings within the limits of such districts and the purchase of the necessary sites therefor, a tax not to exceed fifty cents on the one hundred dollars valuation, such tax to be for the payment of the current interest on and provide a sinking fund sufficient to pay the principal of bonds which said districts are empowered to issue for such purposes."

It is then provided that the amount of maintenance tax and bond tax shall never exceed $1 on the $100 valuation and for the adjustment of the maintenance tax so as to keep the total within said limit. It is further provided that no tax "shall be levied, collected, abrogated, diminished or increased, and no bonds shall be issued hereunder, until such action has been authorized by a majority of the votes cast at an election held in the district for such purpose, at which none but property tax paying qualified voters of such district shall be entitled to vote."

It is apparent from the above that the Legislature has liberally construed its authority under the above-mentioned constitutional provisions. Especially is that true as to the provision material here, authorizing the Legislature to empower school districts to vote bonds and a tax "for the erection and equipment of school buildings therein." The mandate of the Constitution is thus expanded by legislative construction to include, in addition to erection and equipment, the purchase of school buildings, the repair of same, and the purchase of necessary sites for school buildings. Would it not seem that the Legislature is assuming to exercise about all the authority that the Constitution permits? Then we are asked to add by simple implication to the foregoing legislative grant of authority to independent school districts yet another, which is the authority to call and hold an election to determine whether or not a school district, owing maybe no debts, shall assume and tax itself to pay the debts of another municipality. What is there in the above-mentioned grant of authority from which should be implied the unmentioned authority to assume such debts? Does the implication arise from

the fact that the new district succeeds to the property for which the assumed indebtedness paid? Expressions are to be found in some of the decisions which would seem to so suggest. But, if so, the fallacy of that view could perhaps be no better illustrated than by the facts of this case, which show that the property received constituted a liability instead of an asset. Is the authority in question to be implied from the provision authorizing the formation of school districts to include in whole or in part pre-existing districts with a bonded indebtedness? A sufficient answer to such query is that it is not absolutely essential that a new district assume the indebtedness of a former district, and certainly it cannot be contended that such authority is to be implied merely because it may tend to promote the purposes involved in the re-establishment of districts.

The statutes manifest quite plainly the legislative intent that school districts shall exercise their powers in specific ways. Would it be contended that, under authority of an election to vote bonds to "repair" a school building, the trustees would be authorized to purchase a "site," or, under authority to "equip" a building could it be contended that a district would be authorized to "repair"? Under subdivision 4 of said article a tax could not be abrogated under authority of an election to diminish just about as certainly as that it could not be increased under authority to diminish it. The entire procedure in the articles of the statutes mentioned is prescribed with such minuteness of detail as in my opinion to exclude rather than include by implication a purpose or intent to authorize an election to assume indebtedness. Since, as before suggested, if the Legislature had granted the power in question, it must be implied from the grant of authority "for the purchase, construction, repair or equipment of public free school buildings * * * and the purchase of necessary sites therefor," it is significant that in article 2786 it is provided that all bonds shall be sold to the highest bidder for not less than their par value and the proceeds deposited in the depository to be "disbursed only for the purpose for which said bonds were issued," etc. The sale for cash would seem to exclude a transaction involving the exchange of one kind of obligation for another. Article 2787a prohibits the use of any tax money in the redemption of bonds, except such as are lawfully levied and collected for that particular purpose. To this provision there is one exception, and that is the case of redemption of bonds for the purpose of being refunded. Upon first view it may appear that here is a provision from which to imply authority to substitute new obligations of a district for the old obligations of a district subsequently included in the new, but article 2789 very clearly shows that such is not the case. By the last-named article it is shown that the refunding is only

an expedient for reducing interest on the bonds. That it could not include the creation of a new obligation such as is involved in assuming an outstanding indebtedness is clearly manifest by the provision that no election shall be necessary. To undertake to read into that provision an implication of the authority in question would be to bring the law within the inhibitions of the Constitution.

It will perhaps serve no useful purpose to attempt a full review of the decisions in which it has been suggested that the authority in question exists under the general law. No such question was involved or discussed in Crabb v. Celeste Independent School District, 105 Tex. 194, 146 S. W. 528, 39 L. R. A. (N. S.) 601. No election had been held to assume indebtedness and the question before the Supreme Court was whether, in the absence of same, the new territory could be taxed to pay the debts of the old. It is plain that the determination that a tax could not be levied and collected against the new territory for the debts of the old in nowise involved a consideration of the question of whether there existed legislative authority to vote upon such question. The negative expression in the opinion scarcely amounts to even a dictum.

In Burns v. Dilley County Line Independent School District (Tex. Com. App.) 295 S. W. 1091, the special act plainly provided for the assumption of the indebtedness. Besides the election referred to as being authorized by the general law was one to vote a tax for the support of public free schools. There was therefore no occasion for the court to consider whether there was any general law authorizing an election to assume the indebtedness.

In Tilton v. Dayton Independent School District (Tex. Civ. App.) 2 S.W.(2d) 889; Love v. Rockwall Independent School District (Tex. Civ. App.) 194 S. W. 659; Love v. Rockwall Independent School District (Tex. Com. App.) 238 S. W. 642; Henderson v. Miller (Tex. Civ. App.) 286 S. W. 501; Gerhardt v. Yorktown Independent School District (Tex. Civ. App.) 252 S. W. 197; McPhail v. Tax Collector (Tex. Civ. App.) 280 S. W. 260; Hill v. Smithville Independent School District (Tex. Com. App.) 251 S. W. 209; and Willamar Independent School District v. Lyford Independent School District (Tex. Civ. App.) 8 S.W.(2d) 239—there was reference in each to the supposed fact that the general law authorized such elections, but in neither of them was it necessary for a decision, as the special acts in question expressly undertook to give such authority.

In Geffert v. Yorktown Independent School District (Tex. Civ. App.) 285 S. W. 345, the court discussed the power of the Legislature to grant such authority, but did not deal with

the question of whether the Legislature had in fact done so, nor does it appear that such a question was in the case.

The only case that the writer has found in which the suggestion as to the existence of such authority under the general law was material is Terrell v. Clifton (Tex. Civ. App.) 5 S.W.(2d) 808, 810. In that case the authority was said to be Rev. St. 1925, art. 2922h. Article 2922h is a part of a comprehensive and complete statute governing rural high schools. Since it in terms applies to rural high schools, by an elementary rule of exclusion, as the writer sees it, it can have no application to the district in question. Whether the expression in Yorktown Independent School District v. Afflerbach (Tex. Com. App.) 12 S.W. (2d) 130, 133, to the effect that the authority in question existed under the general law, was necessary to the decision, involves a question of construction. The special act there considered provided that the trustees of the district created by the act "shall provide according to law for the assumption by the district of its pro rata part of all outstanding bonded indebtedness of school districts or parts of school districts included in the territory of the district created" by the act. But for the words "according to law" it is clear that the provisions of the special act, aside from the question of constitutionality, constitute full and complete legislative authority for the district to assume the debts. I think the words "according to law" should be construed, not to have any reference to any other law which by its own terms fully authorizes the assumption, but rather to the mode of doing so, such as by the holding of an election at which property tax paying voters only should vote, and a majority be necessary to carry the election. In other words, the special act itself expressly evidences the legislative intent that the district should have authority to assume the indebtedness, and a reference to the general law could at most be nothing more than a legislative construction of the general laws as granting such authority. Such construction, if erroneous, as I think it is, does not detract from the fact that the special act clearly portrays the legislative purpose to expressly grant the authority in question.

But, after all, it matters not how often it may have been repeated that the general law affords the authority in question, if it does not, that fact is conclusive. I respectfully submit that there is no general law from which legislative authority can be legitimately implied for an independent school district, such as this, to hold an election and by majority vote to assume the pre-existing indebtedness of another district.