

# The Attorney General of Texas

November 16, 1979

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/226-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Gerald R. Brown
Executive Director
Texas Industrial Commission
Box 12728, Capitol Station
Austin, Texas 78711

Opinion No. MW-85

Re: Whether issuance of bonds under the Development Corporation Act of 1979, V.T.C.S. article 5190.6, is violative of either article III, section 52 or article XI, section 3 of the Texas Constitution.

Dear Mr. Brown:

You have requested an opinion on the following questions: (1) Will the issuance of revenue bonds by an industrial development corporation pursuant to the provisions of the Development Corporation Act, article 5190.6, V.T.C.S., of paying the cost of a project to be sold or leased to a private, commercial, manufacturing or industrial enterprise or of making a loan to such a commercial, manufacturing or industrial enterprise for the purpose of providing temporary or permanent financing or refinancing of all or part of the cost of a project constitute a violation of article III, section 52 of the Texas Constitution or any other constitutional or statutory requirement? (2) Is the Attorney General's approval of the bonds of an industrial development corporation created and acting pursuant to the provisions of the Act required before such a corporation can issue its revenue bonds?

We have considered the following provisions of the Constitution of Texas:

> ARTICLE III, SEC. 52(a)
>
> Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company.

ARTICLE XI, SEC. 3

No county, city, or other municipal corporation shall here-
after become a subscriber to the capital of any private corporation
or association, or make any appropriation or donation to the same,
or in anywise loan its credit; but this shall not be construed to in
any way affect any obligation heretofore undertaken pursuant to
law.

It is well established that statutes are presumed to be constitutional and that they
will not be overturned unless a specific section of the constitution clearly demonstrates
their invalidity.  Smith v. Davis, 426 S.W.2d 827 (Tex. 1968); State v. City of Austin, 331
S.W.2d 737, 747 (Tex. 1960); Texas National Guard Armory Board v. McCraw, 126 S.W.2d
627 (Tex. 1939).  Thus, the answer to your first question will depend on whether it clearly
appears that the issuance of revenue bonds for the purposes authorized by the Act violates
the constitution.

The Act authorizes the creation and establishment of industrial development
corporations as nonprofit corporations and authorizes such corporations to issue revenue
bonds for stated purposes.  Section 22 of the Act provides that:

Bonds issued under the provisions of this Act shall be deemed not to
constitute a debt of the state, or the unit, or any other political
corporation, subdivision, or agency of this state or a pledge of the
faith and credit of any of them, but such bonds shall be payable
solely from the funds herein provided therefor from revenues. All
such revenue bonds shall contain on the face thereof a statement to
the effect that neither the state, the unit, nor any political
corporation, subdivision, or agency of the state shall be obligated
to pay the same or the interest thereon and that neither the faith
and credit nor the taxing power of the state, the unit, or any other
political corporation, subdivision, or agency thereof is pledged to
the payment of the principal of or the interest on such bonds. The
corporation shall not be authorized to incur financial obligations
which cannot be paid from proceeds of the obligations or from
revenues realized from the lease or sale of a project or medical
research project or refinance in whole or in part a project or a
medical research project. . . . but the corporation is not intended to
be and shall not be a political subdivision or a political corporation
within the meaning of the constitution and the laws of the state,
including without limitation Article III, Section 52 of the Texas
Constitution, and a unit shall never delegate to a corporation any
of such unit's attributes of sovereignty, including the power to tax,
the power of eminent domain, and the police power.

Section 25(e) of the Act provides in part that:

> The principal of and interest on any bonds issued by the corporation shall be secured by a pledge of the revenues and receipts derived by the corporation from the lease or sale of the project or medical research project so financed or from the loan made by the corporation with respect to the project or medical research project so financed or refinanced and may be secured by a mortgage covering all or part of such project or medical research project, including any enlargements of and additions to such project or medical research project thereafter made.

The Texas Supreme Court has held that bonds which are payable solely from revenues do not create a "debt" within the meaning of the Constitution. City of Dayton v. Allred, 68 S.W.2d 172 (Tex. 1934); City of Houston v. Allred, 71 S.W.2d 251 (Tex. 1934).

Further, the Texas Supreme Court has treated the question of "debt" and "lending of credit" as being identical in nature with respect to revenue bonds. Texas National Guard Armory Board v. McCraw, 126 S.W.2d 627 (Tex. 1939); Texas Turnpike Authority v. Sheppard, 279 S.W.2d 302 (Tex. 1955).

Thus, it is clearly established that "debt" and "lending of credit" do not occur when bonds are issued which are payable solely from revenues.

We do not believe that "public money" is involved in the issuance of revenue bonds by an industrial development corporation under the Act. The money received from the sale of such revenue bonds will come solely from private sources (private investment bankers or underwriters), and the money used to pay the principal of and interest on such bonds will also come from a private source. The Act specifically provides that an industrial development corporation created pursuant to the Act is not a political subdivision or a political corporation within the meaning of the constitution and laws of the state. Accordingly, it would appear that there could be no "grant" or "donation" of "public money" in any economic or constitutional sense.

As to the other constitutional restraint against corporate stockholding, it appears that because a corporation created under the Act will have no stock and no members, there will be no violation of constitutional prohibition against a political subdivision becoming a stockholder in a corporation. See Southern Casualty Co. v. Morgan, 12 S.W.2d 200 (Tex. Comm. App. 1929, jdgmt. adopted).

Finally, we note that similar statutes have been upheld by the courts of several states. LeBlanc v. Police Jury of Parish of Rapides, 188 So.2d 131 (La. Ct. App.), writ ref'd, 188 So.2d 807 (1966); State ex rel. Jardon v. Industrial Development Authority of Jasper County, 570 S.W.2d 666 (Mo. 1978) (en banc); West v. Industrial Development Board of City of Nashville, 332 S.W.2d 201 (Tenn. 1960). See Industrial Development Authority of City of Pinal v. Nelson, 509 P.2d 705, 710 (Ariz. 1973) (en banc); Green v. City of Mt.

Pleasant, 131 N.W.2d 5, 17 (Iowa 1964); City of Pipestone v. Madsen, 178 N.W.2d 594, 599 (Minn. 1970); Uhls v. State ex rel. City of Cheyenne, 429 P.2d 74, 86 (Wyo. 1967).

Based upon the foregoing, it is our opinion that the issuance of such bonds would not violate article III, section 52 or article XI, section 3 of the Texas Constitution.

As to your second question, we find that the Texas Constitution does not require that the Attorney General approve bonds prior to their issuance or sale. See Love v. Rockwall Independent School District, 238 S.W. 642, 644-45 (Tex. Comm'n App. 1922, jdgmt. adopted). Although such approval is often required by statute, see, e.g., V.T.C.S. art. 709, it is not necessary that a statute authorizing issuance of bonds require such approval. Amstater v. Andreas, 273 S.W.2d 95, 103 (Tex. Civ. App. — El Paso 1954, writ ref'd n.r.e.); McQuillan, Municipal Corporations § 43.46 (1970). As one treatise explains, an issuer is subject only to the requirements expressly prescribed by law. McQuillan, supra, at § 43.47. It is, thus, our opinion that approval by the Attorney General is not required before a corporation created under the Act can issue its revenue bonds.

## SUMMARY

The issuance of revenue bonds by an industrial development corporation for authorized purposes, pursuant to the Development Corporation Act, article 5190.6, V.T.C.S., will not violate article III, section 52 of the Texas Constitution or any other constitutional or statutory requirement. The Attorney General's approval of such bonds is not required before issuance.

Very truly yours,

**MARK WHITE**
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

TED L. HARTLEY
Executive Assistant Attorney General

Prepared by Robert T. Lewis
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

C. Robert Heath, Chairman

Mr. Gerald R. Brown    -    Page Five    (MW-85)

Bob Gammage
Susan Garrison
Dan King
Robert T. Lewis
William G Reid